BUICE *v.* SCRUGGS EQUIPMENT CO., *et al.*

(KNOXVILLE, September Term, 1951.)

Opinion filed June 7, 1952.

GRIMM, TAPP & CARSON, of Knoxville, for appellant.

FOWLER, LONG & FOWLER, of Knoxville, for appellees.

Mr. Justice Burnett delivered the opinion of the Court.

This is a suit in the Chancery Court of Knox County for breach of contract. The bill as filed was demurred to. The demurrer was sustained by the Chancellor and the suit was dismissed. The cause has been seasonably appealed, error assigned and arguments heard and we now have the matter for disposition.

The bill alleged a verbal contract between the appellant and the appellees. The demurrer in its various grounds averred that the contract being verbal could not be enforced under the Statute of Frauds as set forth in Code Section 7197, a portion of the Uniform Sales Act, and subsection 2 of the Statute for the Prevention of Frauds and Perjuries of Code Section 7831. The demurrer was further based on the fact that any act involving the corporation was ultra vires and that the amount claimed was so far in excess of the value of the rights of the appellant that it would have been unconscionable for a court of equity to enforce the contract.

The contract averred in the bill was that the two owners of all outstanding stock of the Scruggs Equipment Company, Inc., had disagreed among themselves and it became evident that one or the other of these two owners of this stock, who were one Scruggs and the appellee, Keen, must buy the stock of the other in the corporation. In view of this fact both of these parties, Keen and Scruggs, approached the appellant and stated to him that it was necessary for one or the other to own all of this stock to have control of this corporation. Scruggs told the appellant that if he was bought out, that he, Scruggs, was going to form another concern doing a competing business with the Scruggs Equipment Company, Inc. The appellee Keen approached the appellant and made the proposition to him that if he, the appellant, would assist Keen in carrying out the business of the corporation after Keen had obtained control thereof that the appellees, Keen and the corporation, would give to the appellant a certain contract stipulating the amount per month for his work plus commissions, costs for the operation of his car, etc., and would also make him a Vice President and a member of the Board of Directors of the Scruggs Equipment Company, Inc., and would sell him "300 shares of stock in the respondent corporation at the par value of $100.00 dollars per share upon the following terms, to-wit." Then follows the designation of how this stock should be paid for. In consideration of this agreement the appellee Keen, speaking for himself and the Scruggs Equipment Company, Inc., asked that the appellant remain with Keen and the Scruggs Equipment Company, Inc., and assist in negotiations and the purchase of the Scruggs Equipment Company, Inc., stock and assist Keen and the Scruggs Equipment Company, Inc., in "retaining certain manufacturers accounts, and assist respondents

in the purchase and retention of the fabricating business known as the Fabricated Products, Inc., including the equipment thereof, as a going concern, all of which complainant did, * * *.'' Under the averments of the bill the appellant completed his portion of this contract by carrying out everything that he had agreed to do including the surrender of an agreement that he had with the company prior to their disagreement. As a result of his doing so Keen purchased all outstanding stock of Scruggs and became the owner of all outstanding stock in the Scruggs Equipment Corporation. The corporation taking a certain portion of the Scruggs stock as corporate stock and the appellee Keen taking the remainder of the stock for himself. In addition to what has just been·said the appellant was made a Vice President and a Director of the Scruggs Equipment Corporation and did every-·thing to carry out the contract as alleged in the bill. Keen, the now sole owner of all stock in the Scruggs Equipment Company, Inc., and that company refused to deliver the stock to the appellant as had been agreed to. It was alleged in the bill that the stock prior to this agreement was worth some $22,000 more than it was agreed to be sold to the appellant for.

As we read the bill, and the alleged verbal contract as set forth therein, it is one indivisible contract, one part depending on the other. The transfer of the stock to appellant and his giving his notes therefor was an equal and probably the most important part of the contract to appellant while probably the most important part of the contract to the appellees was what the appellant did in assisting this purchase and reorganization and the keeping of certain accounts, etc., for the appellees.

The demurrer, of course, admits all matters of

fact well pleaded in the bill as well as all reasonable, legitimate and natural inferences to be drawn therefrom. When we thus take the bill as demurred to we find a contract averred between these parties which is not unreasonable and unnatural. The difference between the market value of the stock as alleged and that as averred it was agreed to be sold to this appellant for cannot be said to be unreasonable or out of line in view of the alleged agreement which we must take to be true under these averments. We of course cannot say what the value of these services that the appellant was to render was to the appellees. They knew more as to what this value would be at the time this agreement was made than do we. If they did make such an agreement, which we must take under the bill as it now comes to us that they did, they certainly cannot now under the record as it is say that this difference in the value of this stock was so unconscionable as not to be enforced by a court of equity for this reason alone. It is perfectly possible and reasonable that the services of the appellant to the appellees, as averred in the bill, were well worth the amount of the difference between the market value of the stock alleged and that as agreed to be sold to the appellant. Then too, it seems perfectly natural that the appellees would want one who was so valuable to their business as an officer in its corporation to retain the accounts that he apparently controlled and with the knowledge that he had in operating this business. For this reason we think that the ground for demurrer going to this feature of the bill certainly should have been overruled.

The main contention made in the demurrer is that the contract alleged is within the Statute of Frauds as set forth in Code Section 7197, which is as follows:

"A contract to sell or a sale of any goods or choses

in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.''

This was a verbal contract. It of course is not enforceable unless there was a part performance of the contract or something in earnest was given to bind the contract. Obviously then the whole question turns on whether or not there was a part performance of this contract or something of value in earnest was given to bind the contract. The appellees take the position that we will not enforce the contract even though a part performance of the contract has been made because the courts of this State will not enforce a contract for the sale of land contrary to the Statute of Frauds when there has been a part performance. *Cobble* v. *Langford,* 190 Tenn. 385, 230 S. W. (2d) 194. In this regard the appellees overlooked the fact that this Court has specifically held that we will enforce a verbal contract when there has been partial performance as to personal property when we will not do so as to real property. This Court in *Ashley & Gibbs* v. *Preston,* 162 Tenn. 540, 545, 39 S. W. (2d) 279, 280, said:

"Where personal property is involved, the reason for the rule as to sales of land does not apply, and there are no precedents to impel us to interpret this uniform act (referring to the very act here in question) contrary to the construction given it in other jurisdictions.

"The contention that the Legislature in enacting the Uniform Sales Act had in mind the construction which this court had given section 3142 of Shannon's Code (Code of 1932, § 7831) is without merit. In the first place, the statutes are different, and the reason for the rule as to the sale of land does not apply in the sale of personal property. In the second place, the courts have been admonished by the legislature to give the act the construction placed thereon by courts in other jurisdictions where it has been enacted so as to make the law uniform."

We must thus enforce this contract if there has been a partial performance of the contract as made. It is argued that nothing has been done, no part performance, as to the transfer of the stock to the appellant by the appellees and that this—the transfer of the stock and giving the notes therefor—was and is the contract which is sought to be enforced. In our judgment reading the averments of the bill, and making a very thorough study of the contract as alleged, we think that the transfer of this stock and the giving of the notes therefor was only a part of the contract as a whole and that the principal reason for making the offer to thus transfer this stock to the appellant was not the giving of the notes and paying for the stock as alleged but for the things that he did for the appellees to get this stock for that price. It is averred in the bill that he did all these things. It thus appears that there has been a part performance of the contract in that the appellant has done everything that he agreed to do for this stock to be transferred to him except of course the signing of the notes for the stock and of course he would not do this until the appellees were willing and ready to transfer the stock to him. He

avers in his bill that he repeatedly requested them to do so and they refused. We think there is a sufficient partial performance of the contract, as a whole, alleged to take the matter out of the Statute of Frauds.

■ ■ This doctrine of partial performance to take the verbal contract out of the operation of the Statute of Frauds is purely an equitable doctrine and is a judicial interpretation of the acts of the parties to prevent frauds. The acts of the appellant relied on as partial performance had been done by him in pursuance to the averred contract and agreement and are clearly referable thereto. "The plaintiff must be able to show such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, so far to alter his position as to incur an unjust and unconscious injury and loss, in case the defendant is permitted after all to rely upon the statutory defense." 49 Am. Jur., Sec. 427, page 733. We think this quotation fairly sums up the obligation of the complainant in the instant case and that by the averments of the bill the complainant has met these obligations.

■ It is argued and the demurrer sets forth the fact that the contract as alleged was ultra vires. Be this as it may, when we take the factual situation as averred in this bill we think that this corporation has accepted the portions of the contract which were to be done by the appellant and having accepted this benefit and acted in pursuance thereto it cannot now say that the contract was void. *Dillard & Coffin Co.* v. *Richmond Cotton Oil Co.,* 140 Tenn. 290, 204 S. W. 758; *State ex rel.* v. *Holston*

*Trust Co.,* 168 Tenn. 546, 79 S. W. (2d) 1012. Then too, when we analyze the situation of the sole stockholder in a corporation, the other appellee herein, it certainly does not seem reasonable and proper to say that the acts done by this sole stockholder in the corporation shall make any contract that he has made for the corporation ultra vires and void. We think that insofar as the corporation is concerned under the averred facts in this bill that the contract is not ultra vires and if so it has been approved by the corporation and is enforceable.

The appellees in their demurrer further plead the Statute of Frauds as set forth in Code Section 7831, subsection 2, which is: ''Whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person''.

This feature of the plea is based on the fact that under the agreement Keen made a promise to the complainant that the corporation would sell its stock to the complainant and thus thereby Keen agreed to answer for the default of the corporation. We do not think that the promise thus made by Keen, as averred in the bill, comes within this section of the Statute of Frauds. The promise here of Keen was made at the time the original contract was made by Keen who then owned half of the outstanding stock in the corporation and later owned all of the stock in the corporation and obviously any promise made by him moved directly to Keen and was beneficial to him and detrimental to the appellant. Under such circumstances the promise was not within the Statute of Frauds. *Johnson* v. *Lane,* 164 Tenn. 234, 47 S. W. (2d) 554. In reality there is only one obligation although the responsibility is joint. When a person owning all the stock in a corporation or half of it at the time and subsequently gets all of it, it clearly would appear that the Statute of Frauds

here plead was never meant to protect a person in this situation. The promise made by the appellant was for the benefit of both Keen and the corporation and ultimately solely for Keen because he became the sole owner of all stock in the corporation. This ground of the demurrer should have been overruled.

This has been an unusually interesting case to us; excellent briefs have been filed and we have read all authorities therein and made a rather broad and independent investigation of authorities on our part because of the interest we had in the matter. For the reasons above stated we think the Chancellor erred in sustaining the demurrer. The case is accordingly reversed and remanded to the Chancery Court for further proceedings.