217 F.2d 267
 E. J. APPOLONIO, Harold Danziger, Marshall L. Harper, J. M. Wood and O. F. Littlefield,
v.
Louise Rhea BAXTER, Administratrix C.T.A. of the Estate of Isaac T. Rhea.
E. J. APPOLONIO
v.
Louise Rhea BAXTER, Admx. etc.
Harold DANZIGER
v.
Louise Rhea BAXTER, Admx. etc.
Marshall L. HARPER
v.
Louise Rhea BAXTER, Admx. etc.
J. M. WOOD
v.
Louise Rhea BAXTER, Admx. etc.
O. F. LITTLEFIELD
v.
Louise Rhea BAXTER, Admx. etc.
 Nos. 12220-12225.
 United States Court of Appeals Sixth Circuit.
 December 6, 1954.
 
 Walter P. Armstrong, Jr., Memphis, Tenn. (Benjamin Goodman, of counsel, and Armstrong, McCadden, Allen Braden & Goodman, Memphis, Tenn., on the brief), for appellants.
 A. Longstreet Heiskell, Memphis, Tenn., Lewis Rhea Baxter, Jacksonville, Fla., Chandler, Shepherd, Heiskell & Williams, Memphis, Tenn., Rogers, Towers & Bailey, Jacksonville, Fla., for appellee.
 Before SIMONS, Chief Judge, and ALLEN and STEWART, Circuit Judges.
 SIMONS, Chief Judge.
 
 
 1
 The five appellants are claimants against the estate of appellee's decedent who died in Shelby County, Tennessee, on October 2, 1952. They filed a joint claim against his estate in administration proceedings pending in the Probate Court of Shelby County. At the same time, each also filed an individual claim against the estate. The causes were all removed to the United States District Court, where the administratrix, after obtaining answers from the claimants to interrogatories and filing depositions of persons listed in such answers as witnesses, moved for summary judgment on the ground that there was no provable fact issue to be determined by a jury. The motion was sustained, a judgment for the defendant entered, and the appeals followed.
 
 
 2
 The decedent, Isaac T. Rhea, during his lifetime, was president and principal stockholder of Mente & Company, Inc., a corporation with industrial plants in Louisiana. The joint claim recites that, on numerous occasions, Rhea contracted with the claimants, by repeated promises, that in consideration of their agreement to serve the corporation at salaries substantially lower than what each would otherwise have been entitled to receive, and substantially lower than salaries paid by other comparable companies to similar key executives, to leave to the claimants, upon his death, all of his interest and ownership in Mente & Company, Inc., in the proportion that each claimant's individual salary bore to the aggregate salary of all five claimants. It also recited that the claimants performed the contract with the decedent through continued service to the company for inadequate compensation but that the decedent breached the contract and left no stock of the corporation to them by will, or otherwise, that the stock owned by the decedent was sold by his administratrix for an aggregate price of $2,239,368.73, and that by reason of Rhea's failure to fulfill his contractual undertakings, the claimants were damaged in that amount, that it was a valid obligation of the estate upon which no payment in whole, or in part, had been made and that they are entitled to the money in the proportion set up in the claim for each. These proportions are: Danziger 35%, Appolonio 25%, Littlefield 15.50%, J. M. Wood 15.50% and M. L. Harper 9%. Simultaneously, with the filing of the collective claim, each claimant filed his individual claim, counting upon the identical contract recited in the joint claim and seeking his prorata share of the proceeds derived from the sale of the Rhea stock, Danziger claiming $783,779.06, Appolonio $559,842.18, Harper $201,543.19, Wood $347,102.15 and Littlefield $347,102.15.
 
 
 3
 The decedent left a will which bequeathed all of his property to his wife, Posey Blanker Rhea. The will could not be probated, since Mrs. Rhea's death preceded that of her husband by four weeks. The administratrix, Louise Rhea Baxter, sister of the decedent and his only living heir, consequently, took the entire estate under state laws of intestacy. She qualified as administratrix and the business of Mente & Company, Inc., having been conducted with the aid of the claimants for approximately ten months at substantial loss, she succeeded, after much negotiation in which the claimants Appolonio and Danziger actively participated, in selling the Rhea stock. This was represented by them to the purchaser as the shares of Mrs. Baxter. There was no assertion by them of ownership therein. To a lesser extent, the other claimants, likewise, participated. They were aware that the stock was being offered for sale by the administratrix, knew of the negotiations for sale, and Wood and Littlefield assisted by showing their respective plants to prospective purchasers. They, likewise, asserted no financial interest in the decedent's shares.
 
 
 4
 Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., deals with summary judgments and provides in subsection (c) as follows: "The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Of this Rule, a distinguished member of the Drafting Commission, said: "Another radical departure from our Tennessee practice is a rule providing for summary judgments. Under this Rule, either party may move, with or without affidavits, for a summary judgment. * * * The value of this practice is that it weeds out those cases where there is no real cause of action and those where the defense is merely frivolous." 15 Tennessee Law Review, 614, 625.
 
 
 5
 In support of her motion for summary judgment, the administratrix addressed certain interrogatories to the claimants, inquiring as to the date of their employment, their several capacities, their salaries and bonuses, and the dates and amount of increases in both. The answers disclosed that during the period when the alleged contract was made, or reaffirmed, there had, in each case, been substantial increases, both in salary and bonuses, up to the time of the decedent's death. In depositions taken of five witnesses, listed by the claimants, there were disclosed representations alleged to have been made by the decedent that the company would some day "belong to the boys," without any designation therein as to who constituted the class referred to and without any information from the decedent as to the share each was to get.
 
 
 6
 The motion for summary judgment is grounded upon the proposition that the alleged contract is not supportable by legal proof because of the provisions of the so-called Dead Man's Statute, Tennessee Code § 9780, because of the Tennessee Statute of Frauds §§ 7197, 7831, the Statute of Limitations § 8600, the doctrines of estoppel, laches, hearsay, and the lack of an adequate consideration to support the contract, without which an oral agreement to make a will is unenforceable under §§ 8098.1-8098.6.
 
 
 7
 It is indisputable, upon the facts therein alleged, that the claims are based upon an oral contract to make a will. The claimants aver, in their joint claim, a promise by the decedent "to leave to claimants, upon the death of the decedent, all of decedent's interest and ownership in Mente & Company, Inc." The general rule is that such oral contract must be definite; proven as pleaded; cannot be established by loose or casual conversation; must be fair and the proof leave no reasonable doubt that the contract as pleaded was in fact made and has been performed by the parties relying on the contract. This was said in respect to the provisions of a Missouri contract recited in Plemmons v. Pemberton, 346 Mo. 45, 139 S.W.2d 910, but we recognized it as sound in McCabe v. Bagby, 6 Cir., 186 F.2d 546, 549. To the same effect is our decision in Rash v. Peoples Deposit Bank & Trust Co., 6 Cir., 192 F.2d 470, where we held that the rule in Kentucky, as to admissibility of conversations between a deceased person and a litigant seeking to establish a claim upon him, is identical with that recognized in almost all jurisdictions. It is true, of course, that if trial were had, it is conceivable, although highly improbable, that the quantum of proof as to the making of the alleged contract would be enlarged beyond what is indicated in the claims and answers to interrogatories. However, in Engl v. Aetna Life Insurance Company, 2 Cir., 139 F.2d 469, 473, it was held, in respect to summary judgments, on the authority of many Federal cases, that mere formal denials or general allegations which do not show the facts in detail, or with precision, are insufficient to prevent the award of summary judgment leading to the conclusion "if one may thus reserve one's evidence when faced with a motion for summary judgment there would be little opportunity `to pierce the allegations of fact in the pleadings' or to determine that the issues formally raised were in fact sham or otherwise unsubstantial. It is hard to see why a litigant could not then generally avail himself of this means of delaying presentation in his case until the trial. So easy a method of rendering useless the very valuable remedy of summary judgment is not suggested in any part of its history or in any one of the applicable decisions." In Surkin v. Charteris, 197 F.2d 77, 79, in referring to the general practice governing motions for summary judgments, the Fifth Circuit Court of Appeals said: "Although the burden is on the moving party to demonstrate clearly that there is no genuine issue of fact, the opposing party must sufficiently disclose what the evidence will be to show that there is a genuine issue of fact to be tried." The assertion in affidavits of the appellants that at the trial the claimants may produce further evidence does not preclude the granting of a summary judgment. The claimants had six months from the filing of claims until judgment to complete their investigations. They asked for no delay, and presented no petition for rehearing based on newly discovered evidence, and make no argument here that such evidence is now available. It would seem, therefore, that considering the allegations of the complaint, and those of the answers to interrogatories in the light most favorable to the claimants, there would be lacking at the trial that precise, convincing, and persuasive proof of the oral contract alleged that would require the court to submit the issue of its making to a jury and we perceive no difference of principle in respect to the quantum of evidence required which distinguishes the entry of summary judgment from the direction of a verdict in favor of the defendant.
 
 
 8
 It is conceded that while the contract was alleged to have been made in Louisiana, the Tennessee Statute of Frauds is applicable because the decedent at his death was domiciled in Tennessee and that the Tennessee statute provides that the transfer of personal property is controlled by the law of the owner's domicile or the place of transfer. Allen v. Bain, 39 Tenn. 100. But the appellants contend that their partial performance, in working for a lower salary over a period of years, removes the alleged verbal contract from the operation of the statute. They cite many cases, the latest and most important of which is Buice v. Scruggs Equipment Co., 194 Tenn. 129, 250 S.W.2d 44. There, on page 137 of 194 Tenn., on page 48 of 250 S.W.2d, the court said, in exposition of the Tennessee law, that it requires that: "The acts of the appellant relied on as partial performance had been done by him in pursuance to the averred contract and agreement and are clearly referable thereto." In the present case, the claimants received periodical raises and bonuses over the years they were employed by Mente & Company, Inc., until the time of Rhea's death. They were under no compulsion to continue in its employ and were free to find work elsewhere. It is thus not apparent whether their continuation in service was referable to the promise sued upon or to the increases in salary and bonus. Their unsupported assertions that they remained in reliance upon the contract is not enough, in view of the requirements to answer the interrogatories with offer of proof to establish an issue of fact.
 
 
 9
 If we have reasoned unsoundly upon the issues of the quantum of evidence and partial performance, a fundamental question still remains which, in our view, controls decision and that is the applicability of the so-called Dead Man's Statute of Tennessee. By §§ 3813a, 3813c, 3813d, T. & S.' Code, Code, § 9777, no person shall be incompetent to testify because he or she is a party to or interested in the issue to be tried. This provision is, however, subject to the exception in the next succeeding section. "In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party." Code, § 9780. The appellants place their emphasis upon the phrase "neither party" and argue that the exception does not include witnesses merely because of their interest but goes only to the parties, so that if a witness be not a party, he is competent for all purposes under the general provision notwithstanding he may be interested in the result. It is urged that as to each individual claim the four remaining claimants, though interested, are not parties and, so, are competent to testify for one another, even if not for themselves, since such is the letter of the statute. Many Tennessee cases applying this concept are cited. We need not analyze them because they do not reach the factual circumstances herein disclosed. While it is true that, technically, each individual claim was by a single claimant, with none of the others joined, realistically considered, all five were parties to each individual suit, as they were formally to the joint suit. The whole galaxy constituted but one joint claim against the estate of the decedent, all joined under permission of Rule 20 of the Federal Rules in the joint claim and all five claims are based upon the same series of alleged statements made by the decedent and must stand and fall on the same evidence. If the contract is established as to one claimant, it is established as to all. Nowhere is it suggested that the evidence will differ among the claimants, in respect to proof of the alleged agreement. All of the claims were filed simultaneously. Collectively they opposed the motion for summary judgment. They argued as one here.
 
 
 10
 If this were not enough, an analysis of the joint claim and the individual claims demonstrates that they are irrevocably joined in the litigation. The joint claim alleges that the decedent had agreed to leave to the claimants, upon his death, all of the decedent's interest and ownership in Mente & Company, Inc., in the proportion that each of said claimant's individual salary bore to the aggregate salary of the five claimants, and that each respective interest in the avails of the Rhea stock is a fixed percentage thereof. Each individual claimant, thereupon, claims as his proportional share of the fund a sum computed in dollars and cents by the application of the percentages alleged in the joint claim. It, necessarily, follows that all must prevail and that if one fails by reason of equitable estoppel, or on any other ground, the base upon which the joint claim rests disappears, namely, that each claimant's individual proportional share in the fund is to be determined by the ratio of his salary to the aggregate salary of all five claims. In other words, if one or more of the claims is successfully defended, there is left no aggregate salary of five claimants to support the percentages of recovery alleged by the others in their individual claims. This would leave the contract so indefinite and so lacking in precision that no court would undertake to enforce it.
 
 
 11
 Finally, the appellants contend that the Dead Man's Statute was waived by the interrogatories propounded to the claimants in support of the motion of the administratrix for summary judgment. We have analyzed those interrogatories carefully. They require no answer dealing with conversations with the decedent. We answered a similar contention sufficiently in Rash v. Peoples Deposit Bank & Trust Co., supra. It is unimportant in this connection that the answers were introduced in evidence. They did not relate to conversations, and no response by the claimants to the interrogatories could enlarge upon their scope.
 
 
 12
 It is our conclusion that the claims asserted in the Probate Court and in the court below are not provable by the evidence of one, or any of the claimants. The applicable Tennessee cases recognize a distinction between parties merely in interest from those who though technically not parties, actually are, and must be so classified. In Roy v. Sanford, 140 Tenn. 382, 389, 204 S.W. 1159, 1161, it was said: "The court will also consider the interest of the parties when one of them is, under the permission granted by the statute quoted, called to testify by another, no matter what his technical position on the record may be." Citing Trabue Davis & Co. v. Turner, 57 Tenn. 447, 453. In Nashville Trust Co. v. Williams, 15 Tenn.App. 445, it was said: "A party cannot testify in favor of his co-party where the interest of the co-parties are joint or so connected that all must succeed or fall together." So, concluding, we find it unnecessary to consider the defenses of equitable estoppel, laches, the statute of limitations, or the unconscionable character of the claims for recovery.
 
 
 13
 The summary judgment is affirmed.