IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 24, 2001 Session

## ROLAND SCHNIDER v. CARLISLE CORPORATION

**A Direct Appeal from the Chancery Court for Shelby County**
**No. 98-1149-2     The Honorable Floyd Peete, Jr., Chancellor**

_____

**No. W2000-01695-COA-R3-CV - Filed April 19, 2001**

_____

This is a breach of contract case in which Plaintiff, a chef, claims he entered into an employment contract of a definite term. Plaintiff and Defendant engaged in negotiations aimed at having Plaintiff open and manage a restaurant. Defendant produced a final draft of the agreement which included salary, bonuses, and an ownership interest in the restaurant. Neither side executed the written agreement, but Plaintiff went to work for Defendant and both parties partially performed the terms of the writing. Defendant terminated Plaintiff's employment several months later, and Plaintiff filed this action for breach of contract. The trial court, sitting without a jury, found that no contract existed between the parties and Plaintiff appeals. We vacate and remand.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court is Vacated and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

David M. Rudolph, Memphis, For Appellant, Roland Schnider

Bruce S. Kramer, Scott A. Kramer, Memphis, For Appellee, Carlisle Corporation

**OPINION**

Defendant/Appellee Carlisle Corporation ("Carlisle") hired Plaintiff/Appellant, Roland Schnider, to open and manage a restaurant in downtown Memphis known as "No. 1 Beale." Although the parties to this action never executed a written agreement, they engaged in several rounds of negotiations which culminated in a written document containing the terms Appellant alleges constitute a contract of employment for a definite, three-year period.

Appellant Schnider is an experienced chef who has owned and managed restaurants in the Memphis area for many years. In March of 1997, Marshall Criss, Appellee's Chief Operating Officer, met with Mr. Schnider regarding the possibility of opening a new restaurant in the building

which formerly housed the old "No 1. Beale" Restaurant. At this first meeting, Mr. Schnider expressed interest in the restaurant, but told Mr. Criss that he was in the process of negotiating a contract with another restaurant in Memphis and was not in a position to make an agreement with them.

After negotiations with the other restaurant fell through, Mr. Schnider contacted Mr. Criss to see if Carlisle was still interested in the Beale Street restaurant. Mr. Criss indicated that Carlisle was still interested in the project, and Mr. Schnider, Mr. Criss and Gene Carlisle, the Chief Executive Officer and owner of Carlisle Corporation met in August of 1997. At that meeting, the three men discussed the possibility of Carlisle opening the restaurant with Mr. Schnider as the restaurant's manager. Although the men did not reach an agreement at the August meeting, they apparently discussed Mr. Schnider's salary requirements and a fifteen percent (15%) ownership interest for Mr. Schnider in the venture.

After another meeting involving Mr. Schnider, Mr. Criss and Mr. Carlisle, Mr. Criss produced the first draft of the agreement in question (the "First Draft"). After further discussions, Mr. Criss prepared the final draft agreement ("Final Draft") which, among other things, provided Mr. Schnider with: a three-year employment term; salary and car allowance totaling $75,000.00 per year; 15% stock ownership in the new venture, BSL Management Corporation ("BSL"); health insurance; and bonuses. Neither party to this action signed the Final Draft[1], but Mr. Schnider went to work immediately for Carlisle and the restaurant opened for business on December 3, 1997.

In April of 1998, although the restaurant apparently received favorable reviews in the press, Carlisle reduced Mr. Schnider's salary from $75,000 to $50,000. In his testimony, Mr. Criss cited inconsistencies in food preparation, poor morale among restaurant employees, and a general lack of effective leadership on the part of Mr. Schnider as reasons for the pay cut. In May of 1998, Carlisle discharged Mr. Schnider. Carlisle offered Mr. Schnider a one-month severance payment at the reduced salary, apparently in return for Mr. Schnider's agreeing to execute a general release of claims against Carlisle. Mr. Schnider did not sign the release or receive any severance pay.

On December 14, 1998, Mr. Schnider filed a Complaint against Carlisle alleging breach of contract. On the eve of trial, Carlisle filed an Amended Answer adding the Statute of Frauds as an affirmative defense. Mr. Schnider moved to strike the Amended Answer, but the parties proceeded to trial. The trial court, sitting without a jury, found for Carlisle, and on June 20, 2000, filed a final order which states in part:

> [T]he unsigned written document purporting to be an Employment Agreement between the Plaintiff and Defendant does not constitute an enforceable contract, in whole or in part, because there was no meeting of the minds between the parties.

---

[1]Although Mr. Schnider never signed the Final Draft, the record indicates that Mr. Schnider agreed with its terms, and counsel for Carlisle stipulated Mr. Schnider's agreement.

Mr. Schnider appeals and presents several issues on appeal which we perceive to be: (1) Whether the trial court erred in finding that no contract existed between the parties; (2) Whether the trial court erred in allowing Appellee to raise the Statute of Frauds as an affirmative defense; and (3) Whether the Appellant established the part performance exception to the Statute of Frauds so as to render the Statute inapplicable to the contract.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

In order to determine whether an enforceable contract existed between the parties, we must first address the issue of the applicability of the Statute of Frauds to this case. Appellant contends that the trial court erred in not striking Appellee's Amended Answer adding the Statute of Frauds as an affirmative defense. Appellee filed the Amended Answer without an order of court allowing the amendment. Rule 15.01 of the Tennessee Rules of Civil Procedure provides in part:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been set for trial, the party may so amend it at any time within fifteen (15) days after it is served. Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; ***and leave shall be freely given when justice so requires.***

(Emphasis added). Counsel for Appellant moved to strike Appellee's Amended Answer at the beginning of the trial and voiced his objections to the court. The trial court should have granted Appellee's motion. However, we note that counsel for Appellant did not ask the Chancellor for a continuance and, in fact, told the Chancellor that he was ready to proceed with the trial. Where a party does not deem it necessary to seek a continuance, we assume that party is "prepared to meet the defense presented." ***Farmers & Merchants Bank v. Dyersburg Production Credit Ass'n***, 728 S.W.2d 10 (Tenn. Ct. App. 1986). In any event, the error was harmless, because we hold that the disputed contract is valid under the part performance exception to the Statute of Frauds.

An oral contract which is not capable of being fully performed within one year generally falls within the Statute of Frauds. In Tennessee, the Statute is codified at T.C.A. § 29-2-101 and provides in relevant part:

> § 29-2-101. General provisions
>
> (a) No action shall be brought:

-3-

$$* \qquad * \qquad *$$

(5) Upon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract;

unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

T.C.A. § 29-2-101 (2000). Tennessee courts do, however, recognize a part performance exception to the Statute which is applicable to oral contracts other than for the sale of land. *See, e.g., Blasingame v. American Materials, Inc.*, 654 S.W.2d 659, 663 (Tenn. 1983); *Foust v. Carney*, 329 S.W.2d 826, 829 (Tenn. 1959); *Buice v. Scruggs Equipment Co.*, 250 S.W.2d 44, 47 (Tenn. 1952). Our Supreme Court in *Buice* articulated the part performance exception:

This doctrine of partial performance to take the verbal contract out of the operation of the Statute of Frauds is purely an equitable doctrine and is a judicial interpretation of the acts of the parties to prevent frauds. The acts of the appellant relied on as partial performance had been done by him in pursuance to the averred contract and agreement and are clearly referable thereto. "The plaintiff must be able to show such acts and conduct of the defendant as the court would hold to amount to a representation that he proposed to stand by his agreement and not avail himself of the statute to escape its performance; and also that the plaintiff, in reliance on this representation, has proceeded, either in performance or pursuance of his contract, so far to alter his position as to incur an unjust and unconscious [sic] injury and loss, in case the defendant is permitted after all to rely upon the statutory defense." 49 *Am.Jur.*, Sec. 427, page 733. We think this quotation fairly sums up the obligation of the complainant in the instant case and that by the averments of the bill the complainant has met these obligations.

250 S.W.2d at 48.

In *Blasingame v. American Materials, Inc.*, our Supreme Court held that an oral contract for employment which included salary, bonuses, and stock in the employer/corporation was not barred by the Statute of Frauds. 654 S.W.2d at 663. In that case, the Court noted that the plaintiff's employer led him to believe that his employment contract would be honored, and that the plaintiff would "suffer an unconscionable loss if the corporation was allowed to rely upon the Statute of Frauds." *Id.* Similarly, in *Foust v. Carney*, the Court enforced an oral employment contract in

which the employer agreed to increase his employee's salary, bonuses, and a portion of the business's capital stock in order to keep the employee from taking another job. 329 S.W.2d at 827.

As the **Foust** Court noted, "whether or not there was a part performance of [the] contract depends upon the particular facts of . . . each case." **Id.** at 829. In the case at bar, not only did the Appellant perform his part of the agreement, but the Appellee partially performed as well. When he reported for work, Mr. Schnider received his car allowance, benefits, and the agreed-upon salary as set out in the Final Draft. In return, Mr. Schnider devoted 100% of his time to opening and running the restaurant.

There is also evidence that Carlisle also performed on its promise to give Mr. Schnider an interest in BSL. Although Mr. Schnider never received stock certificates for his 15% interest in the corporation, we believe that Mr. Criss' conduct vis-a-vis the stock was indicative of his belief that Carlisle considered Mr. Schnider to be a 15% shareholder. The record indicates that Mr. Criss and Mr. Schnider were present during negotiations with a potential front-end manager for the restaurant. Mr. Schnider testified that he offered the candidate five percent of his stock in the restaurant, and that Mr. Criss told him that he shouldn't have to give away any of his stock, but that any stock should come out of Gene Carlisle's share. Perhaps even more telling than Mr. Criss's comments during these negotiations is the existence of a document entitled "List of Corporate Stockholders and Officers" which the corporation sent to the State of Tennessee Alcohol & Beverage Commission. That document, which Mr. Criss signed under oath, represents Mr. Schnider as a 15% shareholder in BSL Management Corporation.

Appellee argues that, if any contract existed between the parties, it was terminable at-will and that the sworn document is, at best, evidence of Mr. Schnider's ownership in the now presumably defunct BSL. As we have explained above, the document Carlisle submitted to the Alcohol & Beverage Commission is but one piece of evidence which leads us to invoke the part performance exception to the Statute of Frauds. Based on the evidence presented at trial in this matter, we hold that an oral contract for employment existed between Mr. Schnider and Carlisle, and that the terms of the oral contract are contained in the parties' Final Draft agreement. Appellee breached this contract when it terminated Appellant in violation of the contract's terms.

Accordingly, the "Final Order" of the trial court is vacated. Judgment is entered for Appellant, Roland Schnider, for damages to be determined by the trial court, and the case is remanded for such further proceedings as necessary. Costs of the appeal are assessed against Appellee, Carlisle Corporation.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.