RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0092p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

REGIONS BANK,

*Plaintiff-Appellant,*

*v.*

No. 22-5725

DONNIE FLETCHER; DENNIS FLETCHER; INTERNAL
REVENUE SERVICE,

*Defendants-Appellees.*

─────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 1:21-cv-00291—Travis Randall McDonough, District Judge.

Decided and Filed:  May 4, 2023

Before: GRIFFIN, STRANCH, and DAVIS, Circuit Judges.

─────────────

## COUNSEL

**ON BRIEF:**  Walter N. Winchester, E. Brian Sellers, WINCHESTER, SELLERS, FOSTER &
STEELE, P.C., Knoxville, Tennessee, for Appellant.  William A. Harris, III, HARRIS LAW
FIRM, PLLC, Chattanooga, Tennessee, for Appellees Donnie and Dennis Fletcher.  Michael J.
Haungs, Bethany B. Hauser, UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee Internal Revenue Service.

─────────────

## OPINION

─────────────

JANE B. STRANCH, Circuit Judge.  In this judicial foreclosure action, Regions Bank
appeals the district court's order granting summary judgment in favor of Donnie and Dennis
Fletcher ("the Fletcher brothers").  The district court concluded that Regions' suit was barred by

Tennessee's statute of limitations for actions to enforce liens on real property, Tenn. Code Ann. § 28-2-111, and declined to establish an equitable lien in favor of the Bank. For the following reasons, we **AFFIRM** the district court's judgment.

## I.  BACKGROUND

In 1973, the brothers' father, Marvin Fletcher, purchased real property located in Sequatchie County, Tennessee. In 1997, he executed a Deed of Trust and a HELOC, a home equity line of credit agreement (collectively, "the Loan"), in the amount of $200,000, in favor of Regions Bank, which was known as Pioneer Bank at the time. The Deed of Trust was recorded in the Register's Office for Sequatchie County. The terms of the Loan provided for monthly interest payments until the maturity date—May 10, 2007—at which point a final balloon payment of the entire outstanding balance would become due. The Loan contained a provision for "changing the terms of this agreement," which stated that the Bank generally "may not change the terms of this agreement," with certain exceptions, including that "[the Bank] may make changes that unequivocally benefit [the borrower]."

The Loan's maturity date came and went in May 2007, but Regions Bank did not demand payment of the entire balance, refinance the Loan, or foreclose on the property, although it had the right to do so under the Loan. Instead, the Bank continued to accept monthly interest payments. Marvin Fletcher passed away on December 24, 2009.[1] Donnie and Dennis—who used the property as their family trucking company's place of business—made payments on the Loan through their business both before and after their father's death. The Fletchers' bookkeeper, Carol Condra, wrote the checks to Regions Bank, which were drawn out of the business account. Marvin signed the checks before his death, and Donnie signed them after. The Bank did not find out about Marvin Fletcher's death until December 15, 2011, but it continued to accept payments from the brothers even afterward.

The Fletcher brothers maintain that they never requested an extension of the Loan's maturity date, never discussed potential extension terms with a representative of Regions Bank, and never executed a written modification to the Loan. The Bank contends that Carol Condra

---

[1]Marvin Fletcher left a will, but it was never probated.

called to discuss payments in May 2010 and requested an extension. The Bank claims it reinstated the Loan after that phone call with a new maturity date of April 11, 2017. Carol Condra denies requesting an extension and avers that, while she handled the payment of bills and invoices for the Fletchers, she was never given the authority to enter or modify contracts on their behalf. Pamela Harris, a representative of Regions Bank, testified that the Bank had a record of a phone call, but had no record of the substance of the conversation or any written documentation of an extension of the Loan. One of the Bank's internal records simply reflects a maturity date of April 11, 2017.

The Fletcher brothers continued to make monthly interest payments on the Loan until September 2017. In August 2017, Donnie Fletcher realized that the Bank was sending statements demanding payment of the entire debt and contacted the Bank. After visiting the Signal Mountain branch of Regions Bank in person in September 2017 and making what would be the final interest payment, a Bank representative informed Donnie Fletcher that the property would be foreclosed on and "no further discussion would take place." In total, Regions Bank accepted around $100,000 in interest payments on the Loan after it learned of Marvin Fletcher's death.

Donnie Fletcher filed two Affidavits of Heirship on November 28, 2017, averring that, to the best of his knowledge, there were no claims against his father's estate, including taxes or "other obligations." However, Donnie Fletcher testified at his deposition that at the time of his father's death, he was aware of several outstanding debts, including federal tax liens.

On October 9, 2018, Regions Bank filed a foreclosure action against the property in Tennessee state court, requesting a declaration that the Loan's maturity date had been extended and that it be granted the right to foreclose. The Bank named the Fletcher brothers, National Loan Investors, and the IRS as defendants. The IRS removed the case to federal court. The Bank amended its complaint, adding a request that the court grant the Bank an equitable lien against the property. The IRS claims that the brothers owe over $65,000 in tax assessments on the property and that any equitable lien held by the Bank is subordinate to the federal tax lien on the property.

After discovery, the Fletcher brothers moved for summary judgment, and the district court granted their motion. The court determined that the statute of limitations had expired because Tennessee law provides that "liens of mortgages, deeds of trust, and assignments of realty executed to secure debts, shall be barred, and the liens discharged, unless suits to enforce the same be brought within ten (10) years from the maturity of the debt." Tenn. Code Ann. § 28-2-111(a). Notwithstanding the brothers' continued interest payments, it held that the maturity date of the Loan had never been extended beyond the original May 2007 date, reasoning that Tennessee law requires a written instrument, "duly executed and acknowledged," and "filed for record with the register of the county." Tenn. Code Ann. § 28-2-111(c). Thus, the statute of limitations expired on May 10, 2017, ten years beyond the Loan's maturity date. The court also rejected the argument that the brothers were estopped from raising the statute of limitations as a defense and refused to establish an equitable lien on the property in favor of the Bank. The court ultimately concluded that there were no genuine disputes of material fact and that the Fletcher brothers were entitled to judgment as a matter of law on the Bank's declaratory judgment and equitable lien claims.

## II. STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment, "drawing all reasonable inferences in favor of the non-moving party." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). Summary judgment is appropriate only when the evidence, taken in the light most favorable to the nonmoving party, establishes that there is no genuine dispute of material fact, and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

## III. ANALYSIS

This appeal presents two main issues. First, whether the Loan's maturity date was in May 2007, making the Bank's foreclosure suit untimely under Tennessee law, or whether the

Loan's maturity date was somehow extended to April 2017, rendering the suit timely. Second, whether the Fletcher brothers are either equitably estopped from asserting the statute of limitations as a defense, or the Bank is entitled to an equitable lien on the property. The parties agree that Tennessee law applies.

We begin with the plain language of the statute of limitations. Tenn. Code Ann. § 28-2-111(a) provides that:

> Liens on realty, equitable or retained in favor of vendor on the face of the deed, also liens of mortgages, deeds of trust, and assignments of realty executed to secure debts, shall be barred, and the liens discharged, unless suits to enforce the same be brought within ten (10) years from the maturity of the debt.

Applied here, the statute means that unless the original maturity date of May 10, 2007, was extended, the Loan was discharged on May 10, 2017, and the Bank's suit brought in October 2018 is barred. The statute further provides that liens on realty "may be extended without their priority or legal effectiveness being in any way impaired, for any period of time agreed upon and beyond the ten-year period from the maturity of the obligation or debt" provided that the extension is "evidenced by a written instrument . . . [that is] duly executed and acknowledged," and "filed for record with the register of the county in which the realty affected is located." Tenn. Code Ann. § 28-2-111(c). The written instrument must "contain a brief recital of the facts with reference to the original lien and shall provide that the lien shall continue, for a definite period of time in the future[.]" *Id.* Additionally, Tennessee's Statute of Frauds provides that agreements to transfer an interest in land must be in writing. Tenn. Code Ann. § 29-2-101(a)(4).

Regions Bank does not contend that there is a written instrument evidencing an extension of the Loan or that such an instrument was recorded. Instead, it raises a number of arguments, including: that there was an oral modification to the Loan or it had the unilateral right to extend the Loan; that the Loan contained a future advances provision that could extend the maturity date for up to twenty years; that partial performance—the brothers' continued monthly interest payments—excused any writing requirement; and that the brothers are equitably estopped from raising the statute of limitations as a defense or the Bank is entitled to an equitable lien. We address each argument in turn.

It is true, as the Bank argues, that Tennessee courts have relaxed § 28-2-111(c)'s recording requirement and have declined to strictly enforce the statute of limitations when there is a subsequent agreement in writing that "can be treated as a new mortgage or lien, executed and created, within the ten-year period, to take the place of . . . the lien created in the original instrument." *Fidelity Mut. Life Ins. Co. v. Wall*, 68 S.W.2d 108, 110 (Tenn. 1934); *Lindsey v. Lindsey*, 930 S.W.2d 553, 557 n.3 (Tenn. Ct. App. 1996). *But see Bank of Am. v. Hall*, No. 3:14-CV-157-PLR-CCS, 2015 WL 7776559, at *3 (E.D. Tenn. Dec. 2, 2015) ("[A]bsent a duly recorded extension, a renewal of the secured note will not extend the ten-year period."). The problem with several of the Bank's arguments, however, is that a written instrument evidencing the subsequent agreement is required. Tenn. Code Ann. § 28-2-111(c). "A mortgage, or a deed of trust, in its legal aspect is a conveyance of an estate or an interest in land and as such [is] within the meaning of the Statute of Frauds." *Lambert v. Home Fed. Sav. & Loan Ass'n*, 481 S.W.2d 770, 772–73 (Tenn. 1972). A lien on real property "cannot be modified or extended by an oral agreement to secure further indebtedness." *Id.* at 773; *Jackson v. CitiMortgage, Inc.*, No. W2016-00701-COA-R3-CV, 2017 WL 2365007, at *7 (Tenn. Ct. App. May 31, 2017) (noting that "any alleged oral contract or modification" purporting to modify a mortgage note "is presumptively barred" by the Statute of Frauds); *see also Hanas v. Seterus, Inc.*, 92 F. Supp. 3d 747, 751 (E.D. Tenn. 2015). Any extension must be in writing to satisfy the Statute of Frauds.

Because oral modifications to liens on real property are prohibited under Tennessee law, it is unnecessary to resolve the parties' disputes about whether bookkeeper Carol Condra called the Bank in 2010 to request an extension, whether she could extend the terms of the Loan on the Fletcher brothers' behalf, or whether there was a meeting of the minds as to the essential terms of the extension. Even when viewing the record in the light most favorable to the Bank, and assuming the brothers or their representative verbally agreed to extend the maturity date of the Loan, an oral modification cannot establish an extension. *See Lambert*, 481 S.W.2d at 773. Although a screenshot of one internal record of the Bank's shows that the Loan's new maturity date was April 11, 2017, the Bank does not argue that this screenshot is sufficient to satisfy the writing requirement.

The Bank also contends that whether or not the Fletchers requested an extension of the loan, it had the unilateral authority under the HELOC agreement to change terms if they "unequivocally benefit[ted]" the borrower, including to extend the maturity date of the Loan. Setting aside whether extending the Loan's maturity date would "unequivocally" benefit the Fletcher brothers (which they dispute), § 28-2-111(c) "forbids the mere extension of the original mortgage or lien" unless there is a "subsequent instrument of sufficient import" that it can be treated as a new agreement, as the Bank's own case citation makes clear. *See Wall*, 68 S.W.2d at 110. Without a writing evidencing the extension, § 28-2-111(c) bars the Bank's claim to enforce the Loan according to the new maturity date, even if it retained the power to make unilateral changes benefitting the borrower.

Nor did the Loan's future advances provisions automatically extend the Loan's maturity date by another ten years, as the Bank seems to argue. The future advances provisions in the original Deed of Trust allowed for the borrower to receive additional loans from the Bank to be secured by the property, provided that the due date of any new debt "not be more than twenty years after" the original maturity date of May 10, 2007. But the Deed of Trust also provided that "[a]ny such commitment must be agreed to in a separate writing." The Bank does not address this requirement, and its citation to *In re Payne*, 523 B.R. 560 (Bankr. E.D. Tenn. 2014) is not on point, as that case involved a writing—a Chapter 11 Bankruptcy Plan—that the court held satisfied the requirements of § 28-2-111(c). *Id.* at 579-80. And unlike *Payne*, there were never any advances, written or oral, increasing the principal indebtedness in this matter, and the Bank does not argue otherwise.

Next, Regions Bank invokes the doctrine of partial performance to argue that the Fletcher brothers' continued monthly interest payments made through their trucking company evidence an agreement to extend the Loan's maturity date. But, as the district court held, "payment of principal or interest" will not "toll the statute of limitations placed on deeds of trust" under § 28-2-111. *See Slaughter v. Slaughter*, 922 S.W.2d 115, 118 (Tenn. Ct. App. 1995). While the Tennessee Supreme Court has recognized partial performance as an exception to the Statute of Frauds, *Buice v. Scruggs Equipment Co.*, 250 S.W.2d 44, 47-48 (Tenn. 1952), this exception is unavailable when the agreement involves an interest in real property, *see id.*; *Schnider v. Carlisle*

*Corp.*, 65 S.W.3d 619, 622 (Tenn. Ct. App. 2001). As a Tennessee Court of Appeals has explained, "[b]ased on this precedent, we fail to see how an oral agreement involving a transfer of interest in land . . . can escape the bar of the Statute of Frauds based on the partial performance doctrine." *Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 477 (Tenn. Ct. App. 2016); *see also Owen v. Martin*, No. M1999-02305-COA-R3-CV, 2000 WL 1817278, at *4 (Tenn. Ct. App. Dec. 13, 2000) (collecting cases and noting that "it has long been the rule in this state that partial performance will not prevent the application of the Statute of Frauds to an agreement involving interests in real estate."). In sum, a written instrument is required by both § 28-2-111(c) and the Statute of Frauds. The Bank cannot get around that requirement by pointing to the Fletcher brothers' continued payments.

*Bull Market, Inc. v. Elrafei*, an unpublished Tennessee Court of Appeals decision cited by the Bank, is not to the contrary. *See* No. W2016-01767-COA-R3-CV, 2017 WL 464923 (Tenn. Ct. App. Feb. 3, 2017). In *Bull Market*, a purchaser of real property entered into an installment contract and signed a promissory note specifying the date on which monthly payments would be made, but it began making payments on a different day of the month, which the seller accepted for several years. *Id.* at *1. Seven years later, the seller sued for breach of contract, attempting to nullify the agreement based on the "late" payments. *Id.* at *2. The court concluded that "[a]fter a contract is made, it may be modified by express agreement or by conduct that evidences the contracting parties' consent" and that "the parties' course of conduct in carrying out the contract is the best evidence of their original intent." *Id.* at *3. *Bull Market*, however, involved successive written agreements, and the court simply considered parol evidence to interpret the terms of those agreements. The case involved no argument, discussion, or application of either the statute of limitations or the Statute of Frauds, and is therefore not controlling here. *See GRW Enterprises, Inc. v. Davis*, 797 S.W.2d 606, 611-12 (Tenn. Ct. App. 1990) ("The parol evidence rule and the statute of frauds are separate rules that operate independently from each other . . . . The statute of frauds . . . simply makes certain agreements unenforceable through suit unless they are evidenced by a signed memorandum.").

Because the Bank cannot show, as a matter of law, that the maturity date of the original Loan was extended, its suit is untimely under Tenn. Code Ann. § 28-2-111(a). The only

remaining questions are equitable: whether the Fletcher brothers should be equitably estopped from asserting the statute of limitations as a defense, and whether the district court erred in declining to establish an equitable lien in favor of the Bank.**²**

Regions Bank argues that the Fletcher brothers are equitably estopped from asserting the statute of limitations as a defense based on their inequitable conduct. The Bank faults the brothers for not probating Marvin Fletcher's estate, not informing the Bank of Marvin's death for two years, and for filing Affidavits of Heirship in 2017 claiming there were no outstanding debts on the property, even though the Bank had advised them that the Loan had matured. A defendant is equitably estopped from asserting the statute of limitations as a defense "when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012). "The focus of an equitable estoppel inquiry 'is on the defendant's conduct and the reasonableness of the plaintiff's reliance on that conduct.'" *Id.* at 461 (quoting *Hardcastle v. Harris*, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004). The plaintiff must also demonstrate that its delay in filing suit was not attributable to its "own lack of diligence." *Id.* (quoting *Hardcastle*, 170 S.W.3d at 85).

The Bank has failed to demonstrate that its reliance on the Fletcher brothers' conduct was reasonable. Although the brothers did not probate their father's estate or notify the Bank immediately of his death, the Bank nevertheless learned of Marvin Fletcher's death in 2011—after the maturity date of the Loan had passed and before the ten-year statute of limitations had run. And Donnie Fletcher did not file his Affidavits of Heirship until *after* the Bank had demanded that the brothers pay the entire outstanding balance of the debt. It is unclear how any of these actions misled the bank into failing to file a timely foreclosure suit. Indeed, it appears that any delay was due to the Bank's own lack of diligence and failure to comply with Tennessee laws requiring that lien extensions and contracts involving interests in real property be in writing. The maturity date elapsed in 2007, when Marvin Fletcher was still alive. Yet the Bank did nothing. It did not foreclose on the property, although it had the right to do so under the terms of

---

**²**The IRS's brief chimes in on this issue alone, arguing that an equitable lien would be subordinate to the federal tax lien on the property. Regions Bank does not dispute that the IRS's liens would have priority over an equitable lien.

the Loan. Nor did it refinance the Loan, although it had that right too. Instead, Regions Bank just continued to accept interest payments until it decided in September 2017 to foreclose on the property without discussing refinancing with the Fletcher brothers. On this record, Regions Bank has not shown that the brothers misled it into failing to file a suit before the limitations period had run. The Fletcher brothers are not equitably estopped from asserting the statute of limitations as a defense.

Whether the district court erred in refusing to impose an equitable lien on the property involves a similar analysis. "An equitable lien is a right, not recognized at law, to have a fund or specific property, or its proceeds, applied in whole or in part to the payment of a particular debt." *Greer v. Am. Sec. Ins. Co.*, 445 S.W.2d 904, 907 (Tenn. 1969). "In order to create an equitable lien, there must be proof (1) that the parties intended to make the particular property a security for the obligation, (2) that valuable consideration passed between the parties, and (3) there is an equitable reason for imposing the lien." *Ewing v. Smith*, No. 85-294-II, 1986 WL 2582, at *5 (Tenn. Ct. App. Feb. 26, 1986) (citing *Fed. Land Bank of Louisville v. Monroe Cnty.*, 54 S.W.2d 716, 717 (Tenn. 1933)).

Regions Bank contends that the evidence, viewed in the light most favorable to the Bank, establishes that the Loan's maturity date had been extended to April 11, 2017, and that equity requires a finding that the ten-year period for enforcement did not begin to run until that date. The problem with this argument is that "where the remedies available to a litigant are circumscribed by the boundaries drawn at law . . . principles of equity cannot create rights outside those boundaries." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). When a statute applies, courts "will, as a rule, apply the requirement of the statute and not relieve the claim" unless the party claiming equity can show it could not have "prevented the prejudicial situation in which he finds himself." *Swartz v. Atkins*, 315 S.W.2d 393, 395 (Tenn. 1958). The Bank has not done so here. As addressed above, the Bank knew the Loan was in default as early as 2011 (well within the statute of limitations period) but took no action to foreclose or refinance. Had the Bank simply memorialized an extension to the Loan's maturity date in writing as required by Tenn. Code Ann. § 28-2-111(c), it would not be in this

situation.  On this record, we cannot find that equity excuses the Bank's failures, and we decline to impose an equitable lien on the property.

## IV.  CONCLUSION

For all these reasons, we **AFFIRM** the judgment of the district court.