BUIST FOUST

*v.*

CLARENCE G. CARNEY et al.

*(Nashville,* December Term, 1958.)

Opinion filed October 2, 1959.

605

McReynolds & Marks, Clarksville, for appellants.

Goodlett & Goodlett and James C. Cunningham, Clarksville, for appellee.

Mr. Justice Burnett, delivered the opinion of the Court.

Foust filed his suit in the Chancery Court of Montgomery County for breach of contract. The bill as filed was demurred to. After the demurrer was filed an amendment was made to the bill. The demurrer was overruled by the Chancellor and a discretionary appeal allowed. The appeal has been seasonably perfected, errors assigned and arguments heard. We now have the matter for disposition.

The bill alleged a verbal contract between the appellee, Foust, and the appellants, Carney, et al. The demurrer of the defendants is based on two grounds to wit: (1) that the bill shows on its face that the cause of action accrued more than six years before the bill was filed and consequently under the Statute of Limitations (Section 28-309, T.C.A.) the cause of action is barred, and (2) that the bill shows on its face that it is based on a verbal contract not enforceable under the Statute of Frauds as set forth in Section 47-1204, T.C.A.

It is alleged in the bill that on or about the early part of February, 1949, the complainant, who at that time was an employee of the defendants and had been since 1920, received an offer from another concern to go with that concern and work for it. The complainant as a result of this offer, which was by letter, took this letter to the defendant and showed it to him. This offer was to pay the complainant $6,000 a year plus 5% of the annual net income of the business and to give him 25% of the capital stock of that business at cost or book value to be paid for from the 25% of the net income of the business over a period of six or eight years.

As a result of seeing this offer to the complainant the defendant then at that time in 1949 told the complainant that he would meet this offer and so it was that they entered into an identical contract which had been offered the complainant by the other concern.

At the time this offer was made to the complainant the complainant was making $75 per week plus 5% annual bonus of the net income of the business. The offer which the defendant met or agreed to meet was that he pay the complainant $6,000 per year and continue to pay him a

5% annual bonus and further agreed to meet the offer by agreeing to give the complainant 25% of the capital stock of the business at cost or book value to be paid for from 25% of the net income of the business over a period of six or eight years.

The complainant continued to work for the defendant until the early part of September 1954. The defendant was a retail Ford dealer in Clarksville, Tennessee, and had been for many years. In this business he had various charters of incorporation incident to Ford dealerships in this territory.

As a result of this contract the complainant was paid from February, 1949, until he severed his connections in September, 1954, the increased salary of $6,000 a year and 5% annual bonus. The defendant though did not as the acting head and manager of these corporations issue the stock as agreed to the complainant. It is alleged though that as manager of these corporations the defendant "promised the complainant that he was ready and willing to have the stock issued to the complainant, and the said Carney requested their bookkeeper, Mrs. Alice Taylor, to prepare the figures for the settlement with the complainant; which she did, and which was submitted to the defendant".

The bill as amended alleged that the defendant breached the contract in not delivering the stock to the complainant on or about September 1, 1954, and that this, September 1, 1954, was the first date or time that the complainant suspected that the contract to deliver this stock would not be performed.

■ The demurrer, of course, admits all matters of fact which are well pleaded in the bill and the amendments thereto, as well as all reasonable, legitimate and natural inferences to be drawn therefrom. Thus it is that when we take the allegations of the bill as amended, above summarized, we find that this was one contract wherein an employer, to hold a trusted employee who had been with him for more than 25 years at the time, agreed to a substantial increase in salary, to pay a net bonus, and to give or to sell to this employee 25% of the stock of the corporation which was to be paid for out of the earnings of the corporation. This was one indivisible contract and no one can say, in view of the allegations of this bill, that any one part of it was more important than the other.

This suit was filed on August 16, 1956. In November, 1957, an amendment was filed to the bill herein. This amendment as heretofore said was filed after the demurrer was filed but it was permitted and became a part of the allegations of the original bill. In this amendment it is specifically averred that the contract was breached on or about September 1, 1954, and that this was the first date "when complainant first suspected that the contract between him and Clarence G. Carney would not be performed." Thus we have a specific averment as to the time of when there was knowledge of a breach of this contract.

■ Of course the argument is made on behalf of the defendant that it became the duty of the defendant to issue this stock provided for in this contract was in February, 1949, when the contract was made. It becomes our duty though to look at the averments of the bill and

the reasonable and natural inferences to be drawn from these averments to see whether or not such a factual date is binding as to the determinative date of when this stock should have been issued. The stock was to be issued to the complainant and the complainant was not required to pay specifically personally for the stock but the stock was to be paid for out of the earnings of the company over a period of six or eight years. Under such an agreement, as here alleged, it would be natural for the parties to not demand an issue of the stock immediately upon the making of the contract. It is natural to infer that the parties talked back and forth between themselves (the complainant was an employee of the defendant) and that the issue of this stock could be put off from day to day so that it is perfectly obvious that a proper inference under these allegations would be that there was no knowledge that the stock was not to be issued or was not going to be issued until the time that it is averred that there was no knowledge that the defendant was not going to live up to his contract and deliver this stock. Thus it is under the allegations of this bill and the demurrer and its meaning herein that the determinative date for the issuance of this stock would be the time that it is alleged when it was first known that the contract would not be performed, to wit, on or about September 1, 1954. Thus it results that under the plea of the Statute of Limitations this suit having been filed about two years after this was learned that said plea would not be good because the running of the Statute would begin under these allegations as of about September 1, 1954, when it is alleged that it was first known that the contract to deliver this stock would not be performed. The assignment setting forth this feature of the demurrer thus must be overruled.

■ Now we come to the ground of the demurrer which alleges the Statute of Frauds as is now set forth in Section 47-1204, T.C.A. This identical section of the Statute was construed and the Statute copied in full under a very similar state of facts to those herein in the case of *Buice v. Scruggs Equipment Co.*, 194 Tenn. 129, 250 S.W.2d 44. It is needless for us to again refer or give any specific reasons of why this statute is not applicable herein because the reasons as set forth by this Court in the Scruggs Equipment case, beginning at page 134 and continuing through near the bottom of page 137 of 194 Tenn., 250 S.W.2d at pages 47, 48, cover this question in full. We adopt by reference the reasoning therein set forth as applicable to the case now before us.

As to whether or not there was a part performance of this contract depends upon the particular facts of the case as it does and must in each case. It seems to us that the portion of the contract now sought and asked to be performed must be referable to and induced by the contract as a whole. Can we say as a matter of law that the delivery of the stock herein sued for is a divisible or separate part of the contract? We think not because we cannot say that the paying of the $6,000 a year plus a 5% bonus is one contract and the delivery and execution of this stock to be paid for as hereinabove are separate things. It is perfectly reasonable and proper and inferable that this portion of the contract, that is, the execution of the stock by the defendant under the terms of the contract was a major portion of the agreement and its execution certainly could have been considered to have been such a part of the contract in view of the relationship of the parties as to require it before there is a complete performance of the contract. Can we say that the

contract would have been entered into but for the provisions which have been performed? Thus it is that we think there is a partial performance of the contract which would take it out of this statute and basing it on the equities that are clearly inferable from the contract, as alleged, what has been done by way of executing it or a reliance upon it with the clear acquiescence and acts of the defendant make what has been done a partial performance of this contract.

Thus it is that we have concluded that the Chancellor was correct in overruling this demurrer and remanding it for proof under the allegations of the bill. The case must accordingly be affirmed.