**Dan W. WILKINS, Individually, Richard P. Jahn, Jr., Bankruptcy Trustee, Plaintiffs/Appellants,**

v.

**THIRD NATIONAL BANK IN NASH-VILLE, Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 24, 1994.

Application for permission to appeal Denied by Supreme Court Sept. 26, 1994.

Irwin Venick, Woods & Venick, Nashville, for plaintiffs/appellants.

Thomas P. Kanaday, Jr. and Stephen H. Price, Farris, Warfield & Kanaday, Nashville, for defendant/appellee.

### *OPINION*

KOCH, Judge.

This lender's liability case involves a bank's oral agreement to provide permanent financing for the renovation of a Chattanooga restaurant called Aunt Lou's Family Buffet. The corporate borrower[1] and its president

---

1. The corporate borrower later filed bankruptcy, and the trial court substituted its bankruptcy

filed a breach of contract action against the bank in the Circuit Court for Davidson County after the bank refused to provide the financing. The bank filed a motion for summary judgment relying on the three-year statute of limitations governing actions for damage to real property. The trial court granted the motion and dismissed the complaint. The corporation's president and its trustee in bankruptcy perfected this appeal, asserting that the trial court erred in determining when the cause of action accrued. We have determined that the trial court was correct and, therefore, affirm the summary judgment.

## I.

Dan W. Wilkins is an entrepreneur with many years of experience in developing, owning, and operating restaurants in Tennessee and the Midwest. In 1978 he opened a buffet restaurant in the Old Jubilee Center on Brainerd Road in Chattanooga. He operated the restaurant until late 1981 when he sold the business to a Dr. Carpentier. Mr. Wilkins remained liable on the restaurant's lease and also continued as an individual guarantor of a portion of the financing for the restaurant's original equipment package as well as its debt to Third National Bank.

Dr. Carpentier encountered financial difficulties and closed the restaurant in September or October 1985. Mr. Wilkins re-entered the scene at this point and decided to take over the management of the restaurant because he remained liable on the original note to Third National Bank and on the lease. Mr. Wilkins and others incorporated Dorothy W., Inc. for the purpose of running the restaurant and decided to reopen it under the name of Aunt Lou's Family Buffet.

Mr. Wilkins soon discovered that Dr. Carpentier had permitted the restaurant to deteriorate and that extensive renovations would be necessary before it reopened. On December 12, 1985, he arranged with Hank Miles at Third National Bank to borrow $270,000 to finance these renovations. The renovation

work uncovered other serious plumbing and structural problems, and thus the cost of the renovations increased significantly. Mr. Wilkins notified Mr. Miles of the situation and requested additional financing. Mr. Miles loaned Dorothy W., Inc. an additional $60,000 on February 3, 1986 but declined to make any additional loans until the restaurant was open and operating. Both the $270,000 loan and the $60,000 loan were due and payable by June 1, 1986, if no other financing was arranged.

The restaurant reopened in April 1986. In mid-April, Mr. Wilkins and Dorothy W., Inc. requested Mr. Miles to loan the enterprise $1,130,000 in order to consolidate the existing loans and to provide additional working capital. Mr. Miles declined to make the loan and transferred Mr. Wilkins' and Dorothy W., Inc.'s existing loans to Third National Bank's special assets division which specialized in collecting problem loan accounts.[2] Mr. Wilkins met with two representatives of the special assets division, Ernie Holt and Joe Sadler, who advised him that they would not present his request to the loan committee until Dorothy W., Inc. and Mr. Wilkins paid some of the accrued interest on their existing loans. Mr. Wilkins agreed and paid Third National Bank several thousand dollars.

Mr. Sadler and Mr. Wilkins discussed the status of the requested financing in late May 1986. Mr. Wilkins asserts that Mr. Sadler informed him that the prospect of the loan's approval looked "real good" and that Mr. Sadler again advised him to make additional payments on both his and Dorothy W., Inc.'s existing loans. Third National Bank had not approved the requested financing when both the December 12, 1985 and the February 3, 1986 notes came due on June 1, 1986.

Third National Bank notified Mr. Wilkins on June 12, 1986 that both his personal loans and the loans to Dorothy W., Inc. were delinquent. Since Mr. Wilkins had been under the impression that the bank had agreed to postpone the due date of the notes while it reviewed his request for additional financing,

trustee as a party.

2. In addition to the loans to renovate the restaurant, Third National Bank had also made a personal $300,000 loan to Mr. Wilkins in August 1984 to enable him to pay off the debts left behind by Dr. Carpentier.

he contacted Mr. Sadler to inquire into the status of the loan and to request time to pay off the loans or secure new financing. Mr. Sadler responded in a June 17, 1986 letter that Third National Bank would not proceed with collection if Mr. Wilkins and Dorothy W., Inc. could obtain new financing for their loans. Mr. Wilkins thereupon contacted several financial institutions seeking financing to replace the Third National Bank loans. No bank agreed to provide the new financing, but Union Planters Bank agreed to discuss making the loan.

On July 16, 1986, Mr. Wilkins, Mr. Sadler, and other Third National Bank employees met to discuss Mr. Wilkins' request for additional financing. While Mr. Sadler would not agree to loan Mr. Wilkins more money, he agreed that the bank would extend Mr. Wilkins' and Dorothy W., Inc.'s existing loans for ten years if Mr. Wilkins would satisfy the following three conditions: first, secure a loan commitment for at least $450,000 from another lender; second, secure $150,000 financing for new equipment; and third, obtain a ten-year extension on the lease for the restaurant premises.

Approximately ten days after this meeting, but in any case on or before July 30, 1986, Mr. Wilkins informed Mr. Sadler by telephone that he had obtained $350,000 in financing from Union Planters Bank and that he had satisfied all of the other conditions discussed at the July 16, 1986 meeting. Mr. Sadler responded by telling Mr. Wilkins to "cancel the whole deal" and that "we [Third National Bank] want out" and by suggesting that Mr. Wilkins should "have [Union Planters Bank] take over our part too."

Union Planters Bank withdrew its approval of the $350,000 loan as soon as Mr. Wilkins informed them of Mr. Sadler's statements. When Mr. Wilkins informed Mr. Sadler of Union Planters Bank's action, Mr. Sadler responded "that's it then." Mr. Wilkins protested that the failure to obtain financing would force him and Dorothy W., Inc. into bankruptcy, and Mr. Sadler replied "that's what I want, I want you bankrupt." All these conversations occurred on or before July 30, 1986.

Despite Mr. Sadler's unequivocal refusal to make any additional loans, Mr. Wilkins continued to inquire into possible financing arrangements for the restaurant with Mr. Sadler and other representatives of Third National Bank. The bank, however, never indicated a willingness to alter its position. On August 8, 1986, Dorothy W., Inc. filed a Chapter 11 bankruptcy petition. On August 18, 1986, Third National Bank called all of Dorothy W., Inc.'s and Mr. Wilkins' outstanding loans. Later, on December 7, 1986, Dorothy W., Inc. converted its bankruptcy petition from a Chapter 11 to a Chapter 7 proceeding.

On August 16, 1989, Mr. Wilkins and Dorothy W., Inc. sued Third National Bank in the Circuit Court for Hamilton County, alleging, among other things, that the bank had breached its agreement to finance the restaurant project. The court eventually dismissed this suit because of improper venue, and Mr. Wilkins and Dorothy W., Inc. refiled it in the Circuit Court for Davidson County on May 31, 1991. In January 1992, the trial court granted Mr. Wilkins' and Dorothy W., Inc.'s motion for a voluntary nonsuit of all their claims against the bank except for the claim alleging that the bank had breached its July 16, 1986 financing agreement.

Third National Bank later filed a motion for summary judgment insisting that the remaining claim was barred by the three-year statute of limitations governing injuries to property. The trial court granted the motion after finding that the breach of the financing agreement, if there was a breach, occurred on or before July 31, 1986 when Mr. Sadler unequivocally declined to provide Mr. Wilkins with any new financing, that Mr. Wilkins knew or should have known that the cause of action accrued at that time, and therefore, that the complaint filed on August 16, 1989 came too late.

## II.

Since this is an appeal from a summary judgment, our task is to determine whether Third National Bank's motion satisfies Tenn. R.Civ.P. 56's requirements. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991); *Mansfield v. Colonial Freight*

*Sys.,* 862 S.W.2d 527, 530 (Tenn.Ct.App. 1993). Tenn.R.Civ.P. 56.03 contains only two prerequisites for granting a summary judgment: first, there must be no genuine issue concerning any of the material facts relevant to the claim or defense asserted in the motion, *Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn.1993); *Rollins v. Winn Dixie,* 780 S.W.2d 765, 767 (Tenn.Ct.App.1989), and second, the moving party must be entitled to a judgment as a matter of law based on the undisputed facts. *Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn. 1993); *Yater v. Wachovia Bank of Ga., N.A.,* 861 S.W.2d 369, 372 (Tenn.Ct.App.1993).

■ The party seeking the summary judgment has the burden of demonstrating that its motion meets the requirements of Tenn.R.Civ.P. 56. *Downen v. Allstate Ins. Co.,* 811 S.W.2d 523, 524 (Tenn.1991). Since Third· National Bank asserted a statute of limitations defense in its motion, it had the burden of demonstrating that there were no disputes with regard to: (1) the statute of limitations properly applicable to Mr. Wilkins' and Dorothy W., Inc.'s cause of action, (2) the date on which the cause of action accrued, and (3) the date on which suit was filed. *Carvell v. Bottoms,* App. No. 01–A–01–9401–CV–00032, slip op. at 5, 1994 WL 228805 (Tenn.Ct.App. May 27, 1994). No genuine disputes exist concerning the application of the three-year statute of limitations in Tenn.Code Ann. § 28–3–105(1) (Supp.1993) to the claim or the date on which suit was originally filed.[3] Thus, the primary issue on

this appeal concerns when the cause of action accrued.

■ Mr. Wilkins' and Dorothy W., Inc.'s cause of action against Third National Bank is for breach of the bank's agreement to provide financing for the renovation of their restaurant. This cause of action accrued, and thus the statute of limitations began to run, when the bank breached the contract, *Church of Christ Home for Aged, Inc. v. Nashville Trust Co.,* 184 Tenn. 629, 642, 202 S.W.2d 178, 183 (1947), not from the time Mr. Wilkins and Dorothy W., Inc. were damaged by the breach. *State ex rel. Cardin v. McClellan,* 113 Tenn. 616, 624, 85 S.W. 267, 269 (1905).

Mr. Wilkins and Dorothy W., Inc. assert that Third National Bank did not breach its agreement to finance the restaurant until August 18, 1986 when the bank called all of their existing loans. We disagree. Like the trial court, we find that the bank breached its agreement, if it did breach the agreement, on or before July 31, 1986 when Mr. Sadler unequivocally declined to honor the bank's agreement to refinance the debts or to provide any additional long-term financing.[4]

■ A cause of action for breach of contract arises when the acts of one of the contracting parties demonstrates a clear, total repudiation of the contract. *Church of Christ Home for Aged, Inc. v. Nashville Trust Co.,* 184 Tenn. at 642, 202 S.W.2d at 183; *Brady v. Oliver,* 125 Tenn. 595, 617, 147 S.W. 1135, 1140 (1911); *GRW Enters. v. Davis,* 797 S.W.2d 606, 614 (Tenn.Ct.App.

3. The timeliness of the suit should be determined from the time it was originally commenced in the Circuit Court for Hamilton County, not from the time it was filed in Davidson County. The Hamilton County complaint was dismissed for improper venue on June 1, 1990. Since this dismissal was for a ground that did not conclude the plaintiffs' right of action, Tenn.Code Ann. § 28–1–105(a) (Supp.1993) permitted Dorothy W., Inc. and Mr. Wilkins to commence a new action on or before June 1, 1991. The new suit was timely filed in the Circuit Court for Davidson County on May 31, 1991.

4. Mr. Wilkins and Dorothy W., Inc. place great significance in their brief on Third National Bank's denials in the Hamilton County action that it ever agreed to refinance the existing debts and its denial in the Davidson County action that

Mr. Wilkins ever informed the bank of the satisfaction of the conditions agreed to during the July 16, 1986 meeting or that these conditions were ever satisfied. The bank's denials have little practical significance at this point because we must view the evidence in the light most favorable to the nonmoving parties and must also draw all reasonable inferences in the nonmoving parties' favor. *Byrd v. Hall,* 847 S.W.2d at 210–11; *Eyman v. Kentucky Cent. Ins. Co.,* 870 S.W.2d 530, 531 (Tenn.Ct.App.1993). For the purpose of this appeal, we are taking as true Mr. Wilkins' testimony that he informed Mr. Sadler on or before July 30, 1986 that he had met all the conditions discussed at the July 16, 1986 meeting and that he had, in fact, met all of the bank's conditions.

1990); *Harvest Corp. v. Ernst & Whinney,* 610 S.W.2d 727, 728 (Tenn.Ct.App.1980). Thus, the statute of limitations begins to run when a contracting party first knows or should know that the contract will not be performed. *See Foust v. Carney,* 205 Tenn. 604, 609, 329 S.W.2d 826, 829 (1959).

Mr. Wilkins' telephone conversation with Mr. Sadler in late July 1986 provided Mr. Wilkins with knowledge that Third National Bank had clearly and totally repudiated any agreement to finance the restaurant. Mr. Wilkins himself conceded that he understood the significance of Mr. Sadler's statements that "the game was over," that "we want out," and that the bank would "cancel the whole deal." These statements were sufficient to prompt him to seek bankruptcy protection even before Third National Bank declared both his and Dorothy W., Inc.'s loans in default.

Accordingly, no genuine factual dispute exists that Mr. Wilkins knew on or before July 30, 1986 that Third National Bank had repudiated all of its earlier financing agreements. He has produced no evidence that the bank altered its position in response to his later entreaties. Thus, the trial court properly concluded that Mr. Wilkins' and Dorothy W., Inc.'s cause of action accrued on or before July 30, 1986 and was, therefore, time-barred when Mr. Wilkins and Dorothy W., Inc. filed suit on August 16, 1989.

### III.

We affirm the summary judgment dismissing Mr. Wilkins' and Dorothy W., Inc.'s complaint and remand the case to the trial court for any further necessary proceedings. We also tax the costs of this appeal to Dan W. Wilkins and Richard Jahn, Jr., Bankruptcy Trustee for Dorothy W., Inc., and their sureties, for which execution, if necessary, may issue.

TODD, P.J., and CANTRELL, J., concur.