Rick SHEDD, et al.

v.

**GAYLORD ENTERTAINMENT COMPANY.**

Court of Appeals of Tennessee,
at Nashville.

Jan. 9, 2003 Session.

April 7, 2003.

Permission to Appeal Denied by
Supreme Court Oct. 6, 2003.

Jay S. Bowen and Amy C. Martin,
Nashville, Tennessee, for the appellants,

Rick Shedd, Mike Owens, Kevin Erickson, Denise Nichols and Bryan Switzer.

Laurence M. Papel, Cyrus L. Booker, Lawrence S. Eastwood, Nashville, Tennessee, for the appellee, Gaylord Entertainment Company.

## OPINION

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

The developer of a new country music record label made verbal offers of multi-year employment contracts to five music industry executives. The executives accepted the offers, but before work was scheduled to begin, the human resources manager of the label's parent company sent letters to all five, rescinding the offers. The five executives brought suit against the parent company for breach of contract. The trial court granted the defendant's Motion for Summary Judgment, on the ground that the contracts violated the Statute of Frauds. The court also held that the plaintiffs were not entitled to prevail on their theories of partial performance or promissory estoppel. We affirm the trial court.

### I. A NEW RECORD LABEL

Defendant Gaylord Entertainment Corporation hired record company executive Tim DuBois on February 15, 2000 as the company's Executive Vice President, and President of its Creative Content Group. His duties required Mr. DuBois to recruit and hire employees for a new country music label that Gaylord planned to develop and launch.

Mr. DuBois had previously been the president of Arista Records. He began discussions with former employees of Arista and of other record labels, for the purpose of recruiting them to join Gaylord.

He offered multi-year contracts of employment to the five plaintiffs, each to begin on October 2, 2000. However, after he learned in September of 2000 that Gaylord had decided to hold back on its plans for the new record label, Mr. DuBois resigned.

On September 26, 2000, Kimberley Cannon, Gaylord's Vice–President for Human Resources, sent identically-worded letters to each of the plaintiffs, which stated that "in the event you received an offer of employment from former Gaylord employee Tim Dubois to work for Gaylord's proposed new country music record label, such offer of employment is hereby revoked." The letters went on to say that Gaylord's plans for the label had been put on indefinite hold.

### II. PROCEEDINGS IN THE TRIAL COURT

On April 25, 2001, Rick Shedd, Mike Owens, Kevin Erickson, Denise Nichols and Bryan Switzer filed a complaint against Gaylord Entertainment Company. The Complaint recited the facts discussed above, and additionally stated that each of the plaintiffs had accepted Gaylord's offers and entered into valid employment contracts.

The plaintiffs also stated that each had either declined competing offers of employment with other record labels, or ceased pursuing other employment opportunities, or both. Unexecuted employment contracts with a start date of October 1, 2000, between an RCA record label and two of the plaintiffs were attached to the Complaint as exhibits. The plaintiffs asked the court for damages for breach of contract, or in the alternative for relief on a theory of promissory estoppel.

On August 15, 2001, Gaylord moved for summary judgment against the claims of Brian Switzer and Kevin Erickson. The motion was accompanied by a Statement of

Undisputed Facts, a Memorandum of Law, and the Affidavit of Kimberly Cannon. *See* Rule 56, Tenn. R. Civ. P.

Ms. Cannon's affidavit stated that to her knowledge, no employee of Gaylord in a position comparable to the plaintiffs ever started work without a written employment agreement; that none of the plaintiffs had entered into such an agreement; and that none of the plaintiffs started work with Gaylord. Attached to the affidavit were several exhibits, including unexecuted copies of Gaylord's standard employment contract.

The hearing on the defendant's motion was conducted on October 12, 2001. The trial court granted the motion shortly thereafter, on October 29. The court stated that the plaintiff's claims of oral employment agreements for terms in excess of one year were barred by the Statute of Frauds. The court also stated that promissory estoppel is not an exception to the Statute of Frauds.[1] Finally, the court said that there was no meeting of the minds between Kevin Erickson and Gaylord relating to salary, and that Brian Switzer had failed to demonstrate detrimental reliance, or that he had sustained any damages from the revocation of the employment offer.

On November 9, 2001, Gaylord filed a second Motion for Summary Judgment against the claims of the remaining plaintiffs. The trial court granted the motion on January 25, 2002. The court's order did not state the reasons for its action, but we presume that it was based on the same analysis of the Statute of Frauds as is found in the its earlier order. This appeal followed.

---

1. While the trial court's statement may be literally true, it is somewhat misleading. It would have been more correct for the trial court to say that promissory estoppel is a separate cause of action, which may arise in

## III. ARGUMENTS ON APPEAL

The standard of review of a summary judgment is too well known to require much discussion here. A party moving for summary judgment must demonstrate that there are no disputes as to material facts, and that he is entitled to judgment as a matter of law. *Byrd v. Hall,* 847 S.W.2d 208 (Tenn.1993). When considering such a motion, the court must view the pleadings and the evidence before it in the light most favorable to the opponent of the motion. *Wyatt v. Winnebago Industries,* 566 S.W.2d 276 (Tenn.Ct.App.1977). In the present case, there is very little dispute as to the facts, and thus our review must turn on the application of the controlling law (especially the Statute of Frauds) to those facts.

### A. THE STATUTE OF FRAUDS

■ The Statute of Frauds is a venerable rule of law which forbids a plaintiff from maintaining certain types of contract actions without a written note or memorandum of the alleged agreement, signed by the party to be charged. In this state, the Statute is found at Tenn.Code Ann. § 29–2–101, which reads in pertinent part,

(a) No action shall be brought:

(1) . . .

. . .

(5) Upon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract; unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writ-

---

some cases when a valid oral contract is made unenforceable by the Statute of Frauds, but that the court believes it to be inapplicable in the present case.

ing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

In the present case, it is uncontroverted that there was no written contract between the plaintiffs and Gaylord. It is also beyond dispute that a promise to reduce to writing a verbal agreement which is unenforceable under the Statute of Frauds does not make the agreement binding. *Patterson v. Davis,* 28 Tenn.App. 571, 192 S.W.2d 227 (1945).

Since the five alleged agreements are for terms of two and three years each, there is no possibility that they can be fully performed in the space of one year. *See Dickens v. Tennessee Elec. Power Co.,* 175 Tenn. 654, 137 S.W.2d 273 (1940). The plaintiffs argued, however, that the court should have enforced the agreements, under the doctrine of partial performance.

### B. PARTIAL PERFORMANCE

■ Tennessee's Statute of Frauds (as well as those of other states) is patterned after an English Law which was enacted in 1677, as "the Statute for the Prevention of Frauds and Perjuries." *Price v. Mercury Supply Co., Inc.,* 682 S.W.2d 924 (Tenn.Ct. App.1984). Experience has shown that the Statute itself can sometimes be turned into an instrument of the very types of evils it was designed to limit or prevent. *Southern States Development Co., Inc. v. Robinson,* 494 S.W.2d 777 (Tenn.Ct.App.1972). To deal with this danger, the courts have developed the equitable doctrine of partial performance, which in Tennessee can be applied to all types of oral contracts except those for the sale of land. *See Schnider v. Carlisle Corp.,* 65 S.W.3d 619 (Tenn.Ct. App.2001); *Baliles v. Cities Service, Co.,* 578 S.W.2d 621 (Tenn.1979).

Our Tennessee courts have not articulated definite standards for determining the nature or the magnitude of the performance that is necessary to bring an oral contract out of the statute of frauds, other than to say that it depends upon the particular facts of each case. *Schnider v. Carlisle Corp.,* 65 S.W.3d 619 (Tenn.Ct. App.2001); *Foust v. Carney,* 205 Tenn. 604, 329 S.W.2d 826 (1959). It appears to us, however, that if the doctrine is too liberally applied, it could easily result in the exception of partial performance swallowing the rule of the Statute of Frauds, and allowing the proliferation of those very evils that the Statute was created to guard against.

In the present case, some of the plaintiffs characterize as partial performance actions they took in the summer of 2000, pursuant to their understanding that they had a binding contract with Gaylord. Barry Switzer began attending staff meetings at Gaylord's offices, and attending showcases for various artists. Rick Shedd began attending label development meetings, and he called upon potential buyers on behalf of Gaylord while on vacation in Minnesota. Mike Owens flew to Oklahoma on a company plane with Tim DuBois in order to attend an artist showcase.

■ It appears to us, however, that preparing to perform under a contract is not quite the same as actually performing. *See Vitner v. Funk,* 182 Ga.App. 39, 354 S.E.2d 666, 670 (1987) (stating that "acts which are merely preparatory or preliminary to the performance of a contract" do not constitute partial performance). We note that all the activities specified by the plaintiffs took place before the October 1, 2000 beginning date on the disputed contracts, and that the plaintiffs did not expect to be paid for those activities.

In reviewing the cases cited by the parties, as well as cases from other jurisdictions, it appears to us that a plaintiff's partial performance has been deemed suf-

ficient to bring a multi-year employment contract out of the Statute of Frauds only where that performance has been substantial and where it began after the effective date of the contract.

For example, in *Schnider v. Carlisle Corp.*, 65 S.W.3d 619, 622 (Tenn.Ct.App. 2001), Roland Schnider, an experienced restaurant chef and manager, agreed to open a restaurant for the defendant corporation, and manage it for three years at a salary of $75,000 a year. The details of the agreement were set out in an employment contract, but neither party signed the final draft. Nonetheless, Mr. Schnider went to work immediately, and the restaurant was opened shortly thereafter. After four months, the defendant reduced Mr. Schnider's salary to $50,000, and a month later, it discharged him. This court found that both parties had partially performed on their contract, and thus that it could be enforced, despite the Statute of Frauds.

Similarly, in *Blasingame v. American Materials, Inc.*, 654 S.W.2d 659 (Tenn. 1983), the plaintiff worked for over six years in accordance with an oral contract of employment before the defendant finally refused to give him the stock he had promised as part of the plaintiff's compensation. Our Supreme Court found that case to fall squarely within the partial performance exception. *See also Buice v. Scruggs Equipment Co.*, 194 Tenn. 129, 250 S.W.2d 44 (1952).

In *Foust v. Carney*, 205 Tenn. 604, 329 S.W.2d 826 (1959), the plaintiff turned down a job offer after his employer promised him that if he would stay in his current job, the employer would match the offered salary and give the plaintiff 25% of the capital stock in his corporation, paid for out of its earnings. The plaintiff continued working at the job, until he realized that his employer had no intention of giving him the promised stock, and he sued

the employer for breach of contract. The defendant argued that the verbal agreement between the parties could not be enforced, because it violated the Statute of Frauds. The court held that by working under the contract for four and a half years, the plaintiff was entitled to take advantage of the doctrine of partial performance, and thereby to enforce the contract.

Appellants argue that *Foust v. Carney*, supra, presents facts similar to the case at bar, and thus supports their argument, because Mr. Foust, like the appellants, turned down a comparable offer of employment from another employer in reliance on the defendant's representations.

There is some authority for the proposition that a detrimental change in position by the plaintiff, pursuant to an oral contract can be considered a type of partial performance. *See Blasingame v. American Materials, Inc.*, 654 S.W.2d 659, 663 (Tenn.1983). But Mr. Foust performed under his oral contract for many years in reliance on his employer's promise, and we believe that his decision to forgo the other job offer was far less significant to his claim of partial performance than the years of labor he provided to the defendant.

## C. PROMISSORY ESTOPPEL

■ Our cases sometimes refer to promissory estoppel as equitable estoppel or detrimental reliance. It is generally explained as follows: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Alden v. Presley*, 637 S.W.2d 862 (Tenn.1982).

While this expansive definition may seem broad enough to apply to the circumstances before us, the Tennessee Supreme Court has taken a more restrictive view, limiting the application of promissory estoppel to "exceptional cases where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud." *Baliles v. Cities Service,* 578 S.W.2d 621 (Tenn.1979). *See also GRW Enterprises, Inc. v. Davis,* 797 S.W.2d 606 (Tenn.Ct.App.1990); *D & S Coal Co., Inc. v. USX Corp.,* 678 F.Supp. 1318 (E.D.Tenn.1988).

There are no allegations in the present case of any conduct by the defendant that verges on actual fraud. It appears rather that the defendant simply decided to abandon its plan to launch a new record label before entering into enforceable contracts with the plaintiffs. While the plaintiffs may have altered their positions in the expectation that the new label would become a reality, there are no indications that the defendant's decision was based on improper motive, or that it obtained an unconscionable advantage by its actions. Thus, we do not believe that this is one of those "exceptional cases" where promissory estoppel should be applied.

### IV.

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellants.