IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 6, 2010 Session

## GARY COOPER v. CLINTON UTILITIES BOARD

**Appeal from the Circuit Court for Anderson County**
**No. A7LA0655      Hon. Donald R. Elledge, Judge**

**No. E2009-01734-COA-R3-CV - FILED  JULY 23, 2010**

Plaintiff brought this action, charging defendant utility breached its contract with plaintiff to construct a line and deliver electricity to his property.  Defendant filed a Motion for Summary Judgment and the Trial Judge held that there was no meeting of the minds between the parties and defendant was not obligated to construct a line to deliver electricity to plaintiff's dwelling.  On appeal, we affirm.


**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**


HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  D. MICHAEL SWINEY, J.,  and JOHN W. MCCLARTY, J., joined.


Robert W. White, Maryville, Tennessee, for the appellant, Gary Cooper.

Rebecca B. Murray and Catherine E. Shuck, Knoxville, Tennessee, for the appellee, Clinton Utilities Board.


### OPINION


        In this action plaintiff filed a detailed Complaint, in which he alleged  in 2003 he decided to tear down an existing residence on his property and replace it with a manufactured home, and he contacted several officials from defendant and the county to discuss the placement of the home, and was advised that the electric power line would have to be relocated.

He further alleged that he met with defendant's officials on the property and discussed the technical requirements and placement of the home. Plaintiff attached a memorandum of their agreement prepared by defendant. Plaintiff alleged that defendant agreed to relocate the power line in accordance with "option 2" as shown on the diagram which was attached. Further, that defendant agreed to split the cost of $1,600.00 equally with plaintiff, with plaintiff paying $800.00 up front.

Plaintiff further alleged that in reliance with their agreement, he demolished the existing residence and caused the manufactured home to be installed.

Plaintiff alleged that defendant never relocated the power line as it agreed to do, and as a result, Anderson County would not issue a certificate of occupancy for the new home, and the defendant refused to connect power to the home. Plaintiff concluded by alleging defendant breached the contract and sued to recover his damages.

Defendant answered and Counterclaimed, denying that it had an agreement with plaintiff, and that plaintiff rejected the proposals it provided in 2003 and 2004, and in its Counterclaim, asserted that it offered two proposals to plaintiff, through counsel, but plaintiff rejected both proposals. Defendant asked that plaintiff be required to remove his structure and be restrained from further encroaching on defendant's easement.

Defendant filed a Motion for Summary Judgment, saying there was never an agreement between the parties, and thus it was entitled to the summary judgment because plaintiff had illegally placed a structure on its easement. Defendant attached a letter from plaintiff's former counsel, dated May 26, 2004, which states that "proposal No. 2" seemed the most viable option, but plaintiff could not contribute to the cost of the same. The letter states that plaintiff would, however, perform the necessary clearing work of trees and shrubs. Another letter dated July 15, 2004, stated that "no agreement has been reached between these parties".

Defendant filed an Affidavit of Ernest Marvin Bowles, II., who stated that he was the Assistant General Manager and Director of Engineering and Operations for defendant, and that his duties included working with customers on requests for relocation of electrical lines. He stated that defendant's representative met with plaintiff on the property on three different occasions in 2002 and 2003 to discuss relocating the line, but plaintiff did not agree to any proposals offered. He stated that a bullet point memo was faxed to plaintiff after the July 29, 2003, meeting, which detailed an option with a cost of $1,600.00, and that plaintiff would contribute $800.00. He testified that plaintiff never responded to this proposal, but requested another meeting in March 2004. At the 2004 meeting they discussed the relocation of the

line and he observed at that time that the original residence had been torn down and a concrete pad placed directly within the defendant's easement. He testified that he inspected the new pad, and determined that it encroached on the area where they had previously discussed relocating the line as shown on Exhibit 2, and that this was no longer feasible. He testified that subsequent to that meeting, defendant proposed a new plan based on plaintiff's placement of the manufactured home, but determined that none of plaintiff's neighbors would agree to grant the necessary easements. He said that defendant informed plaintiff that he would have to get the necessary easements before they could proceed.

In his further testimony, Bowles said that they had heard nothing further from plaintiff until April 2004, when they were contacted by plaintiff's attorney, and that defendant's counsel and other representatives met with plaintiff and his counsel on the property to discuss relocation of the line on May 20, 2004. Bowles stated that they presented two options for relocating the line, and that plaintiff thought option 1 was not viable, but that they reviewed the costs associated with option 2, and determined the cost would be $4,000.00 and plaintiff's portion would be $2,000.00. The two options were attached to his deposition.

After this meeting, Bowles testified that several letters were then sent back and forth between the parties' counsel, but the end result was that no agreement was ever reached.

Defendant then filed a Statement of Material Facts and a Memorandum of Law in support of its motion.

Plaintiff filed his own Affidavit in response, and stated that his initial meeting was with Mr. Bowles alone, and occurred in June or July 2003, that Mr. Bowles told him what defendant could do with regard to relocating the line, and drew a sketch attached as Exhibit 1. At the conclusion of their meeting, he said that Mr. Bowles told him he would "see to" relocating the line, and never mentioned that plaintiff would incur any cost.

Plaintiff stated that he later received information that he would be responsible for $800.00 for his part of the cost in moving the line, and he received the bullet point document that was attached to Bowles' affidavit. Plaintiff stated that the document states that defendant would not begin line relocation until after plaintiff obtained a building permit and paid his part of the cost. Plaintiff stated that he had the home placed on the pad and then contacted the defendant to connect power, but his request was refused, and he stated that defendant then began putting forth other options for relocating the line.

Plaintiff stated that he met with Bowles in early 2004, and he was told the original plan would not work because they could not get agreement from another property owner for the placement of the necessary guy wires. Plaintiff stated that he was not given the

-3-

opportunity to pay the $800.00, and was told the line relocation would not go forward in the manner agreed. Plaintiff stated that he asked defendant to either move the line in the manner originally agreed or to move it in accordance with Option 2, but explained that the cost of $2,000.00 would be very problematic for him. He stated he offered to pay $500.00 right then if they would do it for a total of $800.00 and Bowles refused to take the money. Plaintiff stated he received a phone call later in the day from someone at defendant's company who said he was calling on behalf of Bowles, and that they would relocate the line for a cost to plaintiff of $800.00. Plaintiff stated that he told the person to "tell them to do it."

Defendant then filed a Motion in Limine to prevent plaintiff from testifying that an unidentified person at defendant's company told him they would relocate the line for a cost of $800.00, and argued that this was inadmissible hearsay. Defendant attached a portion of plaintiff's deposition wherein he testified that he did not know who called him, and that he never paid the $800.00.

The Trial Court granted the defendant's motion in limine.

Plaintiff then filed a revised Affidavit which did not contain the information about the fall meeting or the phone call, but stated that plaintiff asked them to stay within the ballpark of $800.00 for cost to him at the March 2004 meeting, and that Bowles stated they might be able to do so. Plaintiff stated that after the meeting, defendant only proposed alternatives that required him to pay substantially more than the $800.00 he had agreed to pay.

Defendant filed a Motion to Reconsider its earlier Motion for Summary Judgment, indicating that the Trial Court had denied same, although there is no Order in the record to this effect.

The Court then entered an Order Granting Motion for Summary Judgment of defendant, stating that after reviewing the depositions, briefs, pleadings, and affidavits, the Court found that there was no genuine issue of material fact and that defendant was entitled to judgment as a matter of law. The Court found that there was no meeting of the minds to establish a contract or a claim of promissory estoppel, as there was no proof that plaintiff accepted any of the offers made by defendant. The Trial Court dismissed the Complaint and defendant voluntarily dismissed its Counterclaim against plaintiff without prejudice.

Plaintiff has appealed and has raised this issue:

Whether the Trial Court erred in holding that there was no genuine issue of material fact as to whether there was a meeting of the minds and thus, a contract between the parties under the evidence produced in opposition to defendant's motion for summary

judgment?

As our Supreme Court has recently explained:

> Summary judgment is appropriate when the moving party can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn.1993). In *Byrd,* this Court set out the basic principles involved in determining whether a motion for summary judgment should be granted. The moving party has the ultimate burden of persuading the court that "there are no disputed, material facts creating a genuine issue for trial ... and that he is entitled to judgment as a matter of law." *Byrd*, 847 S.W.2d at 215. If the moving party makes a properly supported motion, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists. *Id*. To meet its burden of production and shift the burden to the nonmoving party, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense. *Id.* at 215 n. 5. If the moving party does not satisfy its initial burden of production, the court should dismiss the motion for summary judgment. *See id.* at 215. Summary judgment should be granted only when, with the facts viewed in favor of the nonmoving party, it is clear that no genuine issue of material fact exists.

*Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1 (Tenn. 2008).

In this case, defendant demonstrated that plaintiff could not prove an essential element of his claim at trial, i.e. that a valid and enforceable agreement existed.

The parties agree that an initial meeting took place between plaintiff and Bowles on the property (although there is some controversy regarding whether anyone else was present). The parties further agree that after this meeting, Bowles sent plaintiff a bullet-point memo detailing what they had discussed. Bowles states this was a proposal and that plaintiff never responded to the proposal, and that the next time he went to look at the plaintiff's property the home had already been installed, and its improper placement created a situation that would require more work and more cost in moving the lines.

Viewing the facts in the light most favorable to plaintiff, however, as we must, it is clear that there was still no valid agreement between these parties. Viewing the facts in the light most favorable to plaintiff is more difficult in this case because it appears that plaintiff's own pleadings contradict one another. Plaintiff's Affidavit states that at their initial meeting, Bowles stated that he would "see to" moving the line and mentioned no cost to plaintiff. Plaintiff states that he later received the bullet-point memo and became aware that he was

expected to pay $800.00. Plaintiff states that he also knew that he was supposed to get a building permit and pay this $800.00 and that the lines would then be moved by defendant. Plaintiff stated that he got the building permit and then commenced having the home installed, but does not state anything about further contact with defendant until he tried to have the power hooked up. He further admitted that he did not pay the $800.00.

Plaintiff's original Complaint, however, describes the bullet-point document as a "written memorandum of the points agreed upon by Plaintiff and CUB". He admits in his Complaint that he was required to make an up-front payment of $800.00. Plaintiff further admits this in his interrogatory answers and states that he did not pay the $800.00 or sign the easement because defendant did not relocate the line as it had agreed to do. A review of the bullet-point memo demonstrates that plaintiff's payment of the $800.00 was a prerequisite to defendant beginning work on relocating the lines. Plaintiff admitted in his deposition that he never paid the $800.00 although he tried to pay $500.00 at some point, which he first says occurred at a meeting in the fall of 2004, but he later stated it occurred at a meeting in March 2004.

While there are some factual disputes in this case, those disputes are within plaintiff's proof. The letters from plaintiff's attorney are further proof that there was no meeting of the minds on this issue, as the first letter unequivocally states that "Mr. Cooper is not in a position to offer to CUB a financial contribution toward the relocation of these lines and poles." The second letter clearly states that "no agreement has been reached between these parties" and describes their ongoing discussions as settlement negotiations. Viewing the proof in the light most favorable to plaintiff, it is clear that there was no meeting of the minds between these parties and thus no valid and enforceable agreement. Moreover, if the bullet-point memo was the parties' agreement as plaintiff claims, then he breached the agreement by refusing to pay the $800.00 as he was required to do before defendant would start work on the line.

We conclude that defendant met it's burden of affirmatively negating an essential element of plaintiff's case at trial, i.e., that there was a valid and enforceable contract between the parties.

Further, plaintiff cannot prove promissory estoppel where there was no promise made that would reasonably induce plaintiff's reliance. *Shedd v. Gaylord Entertainment Co.*, 118 S.W.3d 695 (Tenn. Ct. App. 2003). We affirm the Trial Court in granting summary judgment to defendant.

Defendant argues that it is entitled to an award of attorney's fees as sanctions for a frivolous appeal. In order to make such an award, it must be established that the appeal is

so devoid of merit that it has no reasonable chance of success. *Morton v. Morton*, 182 S.W.3d 821 (Tenn. Ct. App. 2005). This appeal does not meet that test, and we refuse to award attorney's fees on the grounds of frivolous appeal.

The Judgment of the Trial Court is affirmed and the cost of the appeal is assessed to the plaintiff, Gary Cooper.

_____
HERSCHEL PICKENS FRANKS, P.J.