# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 11, 2013 Session

## JAMES G. AKERS v. SESSIONS PAVING COMPANY ET AL.

**Appeal from the Chancery Court for Hickman County**
**No. 11-CV-4530      Robbie T. Beal, Chancellor**

---

**No. M2012-02602-COA-R3-CV - Filed August 13, 2013**

---

This action arises out of the alleged breach of a construction subcontract due to the general contractor's failure to pay for work performed by the subcontractor. At issue in this appeal are the plaintiff's two claims against the general contractor and the insurer that provided the performance and payment bond. One claim is for breach of the subcontract; the other is for violation of the Prompt Pay Act, Tennessee Code Annotated §§ 66-34-101 through -703. The trial court granted the defendants' motion for summary judgment finding that both claims were time-barred by Tennessee Code Annotated § 28-3-109(a)(3), the six-year statute of limitations for breach of contract. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, J.J., joined.

James G. Akers, Brentwood, Tennessee, Pro Se.

David K. Taylor and Max Smith, Nashville, Tennessee, for the appellees, Sessions Paving Company and Great American Insurance Co.

## OPINION

In 2004, the Town of Centerville, Tennessee solicited bids for the expansion and improvement of its Municipal Airport. One of the defendants, Sessions Paving Company ("Sessions Paving"), was the successful bidder and was awarded the contract to manage and oversee the construction of the project in early September. The contract was for $523,841.60.

On September 15, 2004, Sessions Paving entered into a subcontract with Akers & Akers of Tennessee, Inc. ("Akers") pursuant to which Akers would perform specific clearing

and excavation activities on the construction site, and the company president, Mr. James G. Akers, would serve as Project Superintendent for Sessions Paving, in consideration for a total fee of $112,153.40.

Akers commenced work on September 21, 2004, and shortly thereafter encountered unexpected problems with the soil which Mr. Akers believed would require substantially more time, resources and costs than the parties had originally agreed upon. As a result, Mr. Akers requested that Sessions Paving amend the contract to provide for additional compensation to Akers. Over the next three months, Akers continued to work on the project while the parties attempted to re-negotiate the subcontract, but the negotiations were unsuccessful. During this period, Sessions Paving remitted progress payments to Akers that were substantially less than what Mr. Akers believed Akers was owed. Akers suspended work on December 13, 2004, when it became apparent that it was not going to be compensated for what it believed to be work in excess of that it contracted to do. Akers never worked on the project after December 13, 2004.

Over the next few months, Mr. Akers continued to ask Sessions for additional compensation for the work Akers performed on the airport project. On March 4, 2005, Akers, Sessions Paving, and the Town of Centerville entered into a settlement agreement, which provided that an independent third party would evaluate and determine a fair price for the work performed by Akers. Mr. Akers signed the agreement on behalf of Akers. One week later, on March 12, 2005, Mr. Akers, acting on behalf of Akers, filed a construction lien on the airport project in the Hickman County Register's Office, stating Akers was owed $46,627.77.

On August 9, 2011, more than six years after entering into the settlement agreement and filing the construction lien, Mr. Akers notified Sessions Paving that he was the successor-in-interest to the corporation's (Akers') rights under the subcontract and the construction lien.[1] He also informed Sessions Paving that if it did not pay him $765,058.71 by August 19 ($61,117.70 under the contract, plus statutory penalties and interest accruing since 2005), he would file a complaint for violation of the Tennessee Prompt Pay Act and for breach of contract.

Sessions Paving refused his demands; thus, on August 24, Mr. Akers (hereafter, "Plaintiff") commenced this action against Sessions Paving and Great American Insurance

---

[1]The defendants do not challenge Mr. Akers' claim that he is the successor-in-interest to Akers & Akers.

Company (collectively, "Defendants").[2] Defendants filed a joint Answer on November 22. After taking discovery, Defendants filed a joint motion for summary judgment, asserting that Plaintiff's claims were time-barred. By Order entered October 16, 2012, the trial court granted Defendants' motion for summary judgment. The court found that the six-year breach of contract statute of limitations applied to all of the claims. The court also found that Plaintiff was "clearly and fully aware that there was a potential claim for breach of contract under its subcontract with Sessions" on March 4, 2005, when Plaintiff entered into the settlement agreement with Sessions Paving and the Town of Centerville, or at the latest March 12, 2005, when Plaintiff filed a construction lien on the airport project with the Hickman County Register of Deeds. Based upon the above undisputed facts, the trial court concluded the August 9, 2011 complaint was untimely and, therefore, dismissed all claims against Defendants.[3] Plaintiff filed a timely appeal and Statement of the Evidence.

## ANALYSIS

Plaintiff raises two issues on appeal, both of which challenge the trial court's determination that his claims are time barred by the six-year statute of limitations for breach of contract actions set forth in Tennessee Code Annotated § 28-3-109(a)(3). First, he contends that his Prompt Pay Act claims are not subject to the six-year statute of limitations. Second, he contends that the trial court erred in finding that his claims accrued more than six years prior to the commencement of this action.

## I. Summary Judgment

This appeal arises from the grant of summary judgment, which is appropriate when a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). It is appropriate in virtually all civil cases that can be resolved on the basis of legal issues alone. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). Whether a claim should be dismissed based on the statute of limitations is a question of law, which we review de novo with no presumption of correctness. *Redwing v. Catholic Bishop Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012) (citing *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 144 (Tenn. 2001)).

---

[2]Plaintiff also asserted claims against two other defendants, the Town of Centerville, and Meriweather Lewis Electric Company. The claims against those defendants are not at issue in this appeal.

[3]Pursuant to Tennessee Rule of Civil Procedure 54.02, the trial court also found "there is no just reason for delay," and directed that the Order be entered as a final judgment, notwithstanding Plaintiff's claims against the Town of Centerville and Meriweather Lewis Electric Company.

## II. The Prompt Pay Act

Section 301 of the Tennessee Prompt Pay Act provides that "[p]erformance by a subcontractor, materialman or furnisher in accordance with the provisions of such person's written contract with a contractor for improvement of real property shall entitle such person to payment from the contractor." Tenn. Code Ann. § 66-34-301. The Prompt Pay Act does not specify a limitations period for such claims, therefore, we must determine the applicable statute of limitations "according to the gravamen of the complaint." *Vance v. Schulder*, 547 S.W.2d 927, 931 (Tenn. 1977).

"In determining the gravamen, or real purpose of an action, the court must look to the basis for which damages are sought." *Keller v. Colgems-EMI Music, Inc.*, 924 S.W.2d 357, 359 (Tenn. Ct. App. 1996) (citing *Bland v. Smith*, 277 S.W.2d 377, 379 (Tenn. 1955)). The Tennessee Prompt Pay Act explicitly applies to *disputes over commercial construction contracts*. *See* Tenn. Code Ann. §§ 66-34-103(a) ("All construction contracts on any project in this state, both public and private, may provide for the withholding of retainage . . . ."); -201 ("Performance by a contractor in accordance with the provisions of a written contract with an owner . . . ."); -301 ("Performance by a subcontractor, materialman or furnisher in accordance with the provisions of such person's written contract with a contractor . . . ."). Thus, commercial construction claims arising under the Prompt Pay Act are grounded in contract. Further, it is readily apparent from the record that the basis for Plaintiff's claim under the Prompt Pay Act is that Defendants failed to pay for work performed by Akers on the commercial construction project. Therefore, we have concluded, as the trial court did, that the six-year statute of limitations for breach of contract claims, Tennessee Code Annotated § 28-3-109(a)(3), applies to Plaintiff's claims under the Prompt Pay Act.

## III. Statute of Limitations for Breach of Contract Claims

A breach of contract gives rise to a cause of action by the aggrieved party, and the statute of limitations for a breach of contract action begins to run "on the date of the breach." *Greene v. THGC, Inc.*, 915 S.W.2d 809, 810 (Tenn. Ct. App. 1995). A cause of action for breach of contract also arises if the acts and conduct of one party show an intention to no longer be bound by the contract, even if the contract has not yet been breached. *Brady v. Oliver*, 147 S.W. 1135, 1138-39 (Tenn. 1911) ("[W]here one party to a contract announces in advance his intention not to perform, the other party may treat the contract as broken, and sue at once for the breach, without waiting the arrival of the time fixed by the contract for performance."). In that case, the statute of limitations begins to run "when a contracting party first knows or should know that the contract will not be performed." *Wilkins v. Third Nat'l Bank in Nashville*, 884 S.W.2d 758, 761-62 (Tenn. Ct. App. 1994) (citing *Foust v. Carney*, 329 S.W.2d 826, 829 (1959)). These rules apply "even though the actual damage resulting

therefrom may not occur until some time afterwards." *State ex rel. Cardin*, 85 S.W, 267, 269 (Tenn. 1905). The issue of when a cause of action arises, or accrues, is a question of fact. *Johnson v. Craycraft*, 914 S.W.2d 506, 511-12 (Tenn. Ct. App. 1995).

It is undisputed the events that form the basis for Plaintiff's claims in this action took place in September, October, November, and December 2004. Akers encountered problems with the soil in September and Sessions Paving got behind on its payments in October and November, which prompted Akers to stop working on the airport project entirely by December. These events were sufficient to prompt Akers to enter into the settlement agreement with Sessions Paving and the Town of Centerville in March 2005. The settlement agreement expressly provided, in pertinent part, that "a dispute has arisen between the parties," regarding the work on the airport project, and that Sessions Paving, Akers, and the Town of Centerville "mutually desire" to settle the dispute by allowing an independent third party to determine the value of the work done by Akers. The settlement agreement further provided that it was entered into for the purpose of creating "a final and irrevocable resolution of the disputed *Claim*," which is, again, Akers' claim that Sessions owes it compensation for its work on the airport project, the same claim at issue in this appeal. Thus, we find, as the trial court did, Akers was of the belief that Sessions Paving had repudiated, and thus breached the subcontract prior to March 4, 2005.

Moreover, in a letter to Robert Hutcheson, President of Sessions Paving, dated May 4, 2005, Plaintiff states that Akers would accept $84,473.72 "just to be paid and 'get the project behind [it].'" He also acknowledges that Sessions Paving had already made it clear that L&G Construction would complete all the work remaining under Akers' subcontract for the airport project.

In a letter to Mr. Hutcheson dated May 16, 2005, Deborah L. Akers, the Secretary-Treasurer of Akers, details the amounts Akers claimed to be owing and past due. She further states that "[Plaintiff] is fully-prepared to proceed with appropriate legal actions, if necessary, and I don't think any of us really want that. All we want is to be paid for all we have earned so, please, let's get this matter resolved quickly for the sake of everyone involved."

In another letter to Mr. Hutcheson, this one dated May 23, 2005, Deborah Akers details several alleged breaches of the subcontract by Sessions Paving and threatens legal action. She states in pertinent part: "I guess that it will be up to a jury to decide whether your 'offer' was any worse than that unless a reasonable and good faith resolution to this matter

is reached quickly. Either way, I can assure you that we will not allow you, Jerry Hall, Sessions Paving Company, or the City of Centerville to continue to steal from us."[4]

It is also undisputed that Plaintiff, as the project supervisor and the president of Akers at the time, had knowledge of all of these events as they were occurring in 2004 and 2005, and that Plaintiff was of the firm belief that Sessions Paving was not going to perform the subcontract in a manner consistent with Plaintiff's interpretation of the contract. *See Brady*, 147 S.W. at 1139; *see also Wilkins*, 884 S.W.2d at 762. Indeed, Plaintiff was the president and corporate officer who made the decision that Akers stop work on the project in December 2004, he is the person who asserted the *claim* against Sessions Paving in a spirited letter in January 2005, and he negotiated the March 2005 settlement agreement with Sessions Paving and the Town of Centerville on behalf of Akers, a settlement agreement he soon rejected as evidence by the May 2005 letters. Further, Plaintiff authored one of the May 2005 letters and was personally aware of the other two May 2005 letters to Sessions Paving threatening a law suit against Sessions Paving for breach of the subcontract if payment was not remitted immediately. Accordingly, the limitations period began to run, at the latest, in May 2005, which was more than six years prior to the commencement of this action.

Based upon the foregoing, we have concluded that there are no genuine issues as to any material fact and that Defendants are entitled to a judgment as a matter of law. Therefore, we affirm the summary dismissal of all claims as time-barred.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, James G. Akers.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[4]According to the May 23 letter from Ms. Akers, Sessions had previously made an offer to pay Akers $5,000, which Ms. Akers characterized as an "outrage and insult."